# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 7, 2013 Session

## NEAL LOVLACE ET AL. v. TIMOTHY KEVIN COPLEY ET AL.

**Appeal from the Chancery Court for Hickman County**
No. 06-128-C      Robbie T. Beal, Judge

**No. M2011-00170-SC-R11-CV - Filed September 6, 2013**

In this grandparent visitation case, we must determine, in the absence of a controlling statutory provision, the appropriate burdens of proof and standards courts should apply where a grandparent and a parent seek to modify and terminate, respectively, court-ordered grandparent visitation. We hold that when a grandparent or a parent initiates a proceeding to modify or terminate court-ordered grandparent visitation, courts should apply the burdens of proof and standards typically applied in parent-vs-parent visitation modification cases. Thus, the burden of proof is upon the grandparent or parent seeking modification or termination to demonstrate by a preponderance of the evidence both that a material change in circumstances has occurred and that the change in circumstances makes the requested modification or termination of grandparent visitation in the child's best interests. Applying this holding, we conclude that the record in this case supports the trial court's judgment modifying grandparent visitation. However, we conclude that the trial court failed to make sufficiently specific findings of fact to support its judgment finding the mother in contempt of the order granting grandparent visitation. Accordingly, we reverse the Court of Appeals' judgment, reinstate that portion of the trial court's judgment which modified the grandparent visitation arrangement, and vacate those portions of the trial court's judgment finding the mother in contempt and ordering her to pay a portion of the grandparents' attorney's fees.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
Court of Appeals Reversed; Judgment of the Trial Court
Reinstated in Part and Vacated in Part**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, and Grant C. Glassford, Brentwood, Tennessee, for the Appellants, Clayton O'Neal Lovlace and Norma Jean Lovlace.

Rebecca K. McKelvey and Gregory D. Smith, Nashville, Tennessee, for the Appellees, Timothy Kevin Copley and Beth Copley.

## OPINION

### Factual and Procedural Background

The minor child at issue in this case was born on September 4, 2002. The minor child's biological parents are Jerry David Rochelle ("Mr. Rochelle") and Beth McLanahan Copley ("Mrs. Copley"), who were married at the time of the minor child's birth. Norma Jean Lovlace ("Mrs. Lovlace") and her former husband, Larry Rochelle, are the adoptive parents of the minor child's father, Mr. Rochelle. After Mrs. Lovlace and Larry Rochelle divorced, Mrs. Lovlace married Clayton O'Neal Lovlace in 1995. Mr. and Mrs. Lovlace (the "Lovlaces") are asserting grandparent visitation rights in this appeal.

The procedural history of this dispute is complex. On April 20, 2004, the minor child's parents, Mr. Rochelle and Mrs. Copley, were divorced by a decree of the Chancery Court for Hickman County. The parenting plan incorporated into the final divorce decree designated Mrs. Copley as the minor child's primary residential parent. Because of Mr. Rochelle's history of drug addiction during the marriage, Mr. Rochelle received only supervised visitation with the minor child, with supervision to be provided by either Mrs. Copley, the Lovlaces, or Larry Rochelle.

On January 15, 2005, Mrs. Copley married Timothy Kevin Copley ("Mr. Copley"; collectively the "Copleys"). After their marriage, Mr. Rochelle, who was incarcerated in the Hickman County Jail, consented to Mr. Copley's adoption of the minor child. On January 27, 2006, however, Mr. Rochelle withdrew his consent to the adoption, and on December 5, 2006, Mr. Copley's adoption petition was dismissed.

The Lovlaces assert that, from the time of the child's birth until February 2006, they had been allowed regular contact and involvement with the minor child, although the parties dispute the extent of and the reasons for the Lovlaces' involvement. According to the Lovlaces, the Copleys began limiting the Lovlaces' contact with the minor child after Mr. Rochelle withdrew his consent to Mr. Copley's adoption.

On April 24, 2006, the Lovlaces filed in the Chancery Court for Hickman County a petition for grandparent visitation pursuant to Tennessee Code Annotated sections 36-6-306 and 36-6-307 (collectively "Grandparent Visitation Statute").[1] The Lovlaces alleged that Mrs. Copley had terminated their substantial prior contact with the minor child in retaliation for Mr. Rochelle's withdrawal of his consent to Mr. Copley's adoption of the minor child and that this change would cause "irreparable injury and substantial harm" to the minor child. The Lovlaces also filed a motion for pendente lite relief, which they scheduled for a hearing the next day, April 25, 2006. On the date of the scheduled hearing, the parties reached an agreement as to all issues and announced that agreement to the court. Both parties were represented by counsel. On May 15, 2006, the Chancery Court for Hickman County entered an "Agreed Order" incorporating the parties' agreement. Neither party moved to modify or set aside the Agreed Order. Tenn. R. Civ. P. 59, 60.

The Agreed Order granted the Lovlaces grandparent visitation pursuant to the Grandparent Visitation Statute. The Lovlaces' visitation consisted of one Saturday per month, from 9:00 a.m. to 5:00 p.m., as well as an additional two hours per week during the "summer"— a term not defined in the Agreed Order. The Lovlaces were required to provide transportation for the visitation. The Agreed Order allowed Mrs. Copley to select the Saturday each month for the Lovlaces' visitation but also required her to provide the Lovlaces with five days advance notice of her selection. The Agreed Order also allowed Mrs. Copley to select the time for the additional two hours of visitation the Lovlaces received each week during the summer, but again, also required Mrs. Copley to provide the Lovlaces with thirty-six hours advance notice of her selection. The Agreed Order precluded the minor child from having any contact with Mr. Rochelle while he remained incarcerated, or at any other time, if his parental rights were terminated. The Agreed Order also specified that the Lovlaces' visitation time should be deducted from any visitation time Mr. Rochelle received under the parenting plan, if Mr. Rochelle exercised his visitation rights upon his release from incarceration and if his parental rights were not terminated. The Agreed Order also contemplated that the minor child's activities would increase over time, and as a result, required the Lovlaces to yield their visitation time as necessary to accommodate the minor child's activities. However, the Agreed Order directed Mrs. Copley to schedule the Lovlaces' Saturday visitation to avoid, to the extent possible, conflicts with the minor child's activities. Finally, the Agreed Order required the Copleys and the Lovlaces to cooperate and

---

[1] The language of the Grandparent Visitation Statute in effect when the Lovlaces filed their petition differed only slightly from the language of the current Grandparent Visitation Statute. Compare Tenn. Code Ann. §§ 36-6-306, -307 (2005), with Tenn. Code Ann. §§ 36-6-306, -307 (2010 & Supp. 2012). The differences have no bearing on the issues in this appeal; thus, quotations and citations refer to the Grandparent Visitation Statute currently in effect.

to endeavor in good faith to carry out the terms of their agreement. Monthly visitation under the Agreed Order began in May 2006.

According to the Lovlaces, problems arose almost immediately after entry of the Agreed Order. The Lovlaces assert that Mrs. Copley denied their visitation with the minor child, as well as Mr. Rochelle's visitation with her upon his release from jail. The Copleys, in contrast, assert that they afforded the Lovlaces the visitation required by the Agreed Order, as well as additional visitation.

On March 15, 2007, the Lovlaces filed a petition for contempt, alleging that the Copleys had violated the Agreed Order in various ways. The petition failed to specify whether the Lovlaces were seeking criminal or civil contempt, but the petition included a request for an award of attorney's fees. On May 23, 2007, the Lovlaces moved for a default judgment on the petition. On June 5, 2007, the Copleys responded to the motion for default judgment, and also moved to dismiss the contempt petition for failure to provide proper notice consistent with the requirements of due process. The Copleys also asked the trial court to require the Lovlaces to designate whether their petition sought criminal or civil contempt. On June 11, 2007, Mr. Copley moved to dismiss the contempt petition as to him, but the Copleys also submitted an answer to the Lovlaces' March 15, 2007 contempt petition. On June 26, 2007, the Lovlaces filed a response to Mr. Copley's motion to dismiss.

Approximately six months later, on January 2, 2008, the Lovlaces moved to amend their contempt petition to specify they were seeking civil, not criminal, contempt against the Copleys. On January 30, 2008, the trial court granted the Lovlaces' motion to amend, and on February 25, 2008, the Lovlaces filed their amended petition for contempt.

On March 9, 2009, the Lovlaces again moved to amend their petition for contempt, and on April 9, 2009, the trial court granted the motion. The Lovlaces' "Second Amended Petition for Contempt and to Modify" sought findings of civil contempt against Mrs. Copley for violations of the Agreed Order and for violations of a December 5, 2006 "Order Modifying/Clarifying Parenting Plan." The December 5th order authorized the Lovlaces to provide transportation for Mr. Rochelle's visitation, which he received under the parenting plan incorporated into the final divorce decree. The December 5th order also required strict adherence to the terms of the parenting plan. The Lovlaces alleged approximately twenty-six separate instances of contempt against Mrs. Copley for conduct that occurred from 2006 to 2009 and sought an award of attorney's fees incurred in prosecuting the contempt petition. The Lovlaces also requested modification of the Agreed Order, seeking additional visitation with the minor child. The Lovlaces' Second Amended Petition also added Mr. Rochelle, the minor child's father, as a party defendant, for purposes of their requests for additional grandparent visitation and modification of the Agreed Order.

While the foregoing proceedings were pending in the Chancery Court for Hickman County, on March 26, 2009, the Chancery Court for Lewis County entered a "Final Order of Adoption," pursuant to which Mr. Copley adopted the minor child, with the consent of Mr. Rochelle.[2]  As relevant to this appeal, the Final Order of Adoption provided that its entry did not "alter or modify the grandparent visitation rights of Neal and Jean Lovlace as previously ordered by the Hickman County Chancery Court."  No appeal was taken from this order.

Back in Hickman County, Mrs. Copley filed, on May 29, 2009, an answer to the Lovlaces' Second Amended Petition for Contempt and to Modify, in which she denied the Lovlaces' allegations of contempt, asked the trial court to award her attorney's fees, but raised no affirmative defenses.  Mrs. Copley also filed a "Counter-Petition to Terminate Visitation," seeking to terminate the grandparent visitation awarded the Lovlaces by the Agreed Order.  On July 24, 2009, the Lovlaces filed an answer to Mrs. Copley's counter-petition, denying its allegations and requesting dismissal.  The Lovlaces also requested the trial court: (1) to issue a restraining order precluding the Copleys from discussing the case with the minor child; (2) to designate the Saturday on which their visitation was to occur; and (3) to order immediate make-up visitation for the time allegedly denied them in December 2008, January through March 2009, and July 2009.

On August 24, 2009, the Copleys, in turn, moved for the appointment of a guardian ad litem for the minor child and for suspension of the Lovlaces' visitation pending a final hearing.  On November 5, 2009, the Copleys also asked the Chancery Court for Hickman County to "declare void and of no effect whatsoever" the provision in the March 26, 2009 Final Order of Adoption entered by the Chancery Court for Lewis County reserving the Lovlaces' grandparent visitation rights.  The Copleys contended that this reservation of grandparent visitation rights contravened a provision of the adoption statute.  Tenn. Code Ann. § 36-1-121(f) ("Adoption Statute").[3]  On November 13, 2009, the Copleys responded to the Lovlaces' motion for a restraining order, for specific Saturday visitation, and for make-up visitation.  The Copleys asserted that the Lovlaces lacked standing to seek a restraining order and that their right to grandparent visitation had been extinguished by the Final Order of Adoption entered by the Chancery Court for Lewis County.

---

[2] The March 26, 2009 Final Order of Adoption indicates that Mr. Rochelle had consented to the adoption and had waived his appearance and venue.

[3] The text of the Adoption Statute currently in effect is the same as the statute in effect at the time of the proceedings in the trial court.  Thus, quotations and citations in this opinion are to the current statute, Tennessee Code Annotated section 36-1-121(f) (2010).

On November 17, 2009, the Chancery Court for Hickman Count held a hearing on the parties' various motions and petitions. By order entered December 9, 2009, the trial court: (1) denied the Copleys' request to declare void the portion of the March 26, 2009 Final Order of Adoption reserving the Lovlaces' grandparent visitation granted by the Agreed Order; (2) granted the Lovlaces' motion for a restraining order; (3) granted the Lovlaces' motion for specific Saturday visitation; (4) deferred until a final hearing the Lovlaces' motion for make-up visitation; (5) denied the Copleys' motion for appointment of a guardian ad litem; (6) denied the Copleys' motion for suspension of visitation; and (7) set the case for a final hearing on June 21, 2010. On January 8, 2010, the Copleys moved for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court denied the motion by order entered March 29, 2010. The Copleys then sought an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, which the Court of Appeals denied by order entered April 5, 2010. No application for permission to appeal was filed in this Court.

Pursuant to an agreed order entered May 26, 2010, the Lovlaces amended paragraphs five through seven of their Second Amended Petition for Contempt. On June 21 and 22, 2010, the trial court held a final hearing on all remaining issues. After the final hearing, the Lovlaces filed a request for fees and expenses of $95,833.14 and submitted an affidavit in support of this request. The Copleys also requested attorney's fees in the amount of $13,353.75 and also supported their request with an affidavit of counsel.

The trial court ruled from the bench on June 29, 2010.[4] The trial court found that, although the May 15, 2006 Agreed Order did not contain what is generally required[5] in a grandparent visitation order, any omission was not fatal because, when the Agreed Order was entered, a clear basis existed for visitation under the Grandparent Visitation Statute. The trial court further found that the reservation of grandparent visitation in the March 26, 2009 Final Order of Adoption was fairly bargained for and that, as a biological parent, Mrs. Copley had the ability to secure the Lovlaces' grandparent visitation rights in the adoption by Mr. Copley.

---

[4] The transcript of the trial court's bench ruling is dated June 21, 2010. The final hearing concluded on June 22, 2010, but the trial court did not issue its ruling at that time, and the record reflects that the trial court issued its bench ruling on June 29, 2010. Although filed on June 30, 2010, the Lovlaces' request for attorney's fees, and supporting documents, are dated June 28, 2010, and appear to have been before the trial court at the time of the June 29, 2010 bench ruling.

[5] The trial court did not elaborate on the meaning of this finding. We note, however, that the findings a trial court must make when initially awarding visitation pursuant to the Grandparent Visitation Statute are not enumerated in the May 15, 2006 Agreed Order.

With respect to the competing requests for modification and termination of grandparent visitation, the trial court found nothing in the record warranting either an increase in, or termination of, the Lovlaces' visitation. Nevertheless, the trial court determined that certain modifications were appropriate, explaining:

> With that being said, the Court does believe that a modification is necessary to secure the grandparents the regular visitation and to take that discretion out of the mother and the adoptive father's hands. I don't believe that it's – I just simply don't believe that is appropriate, that – based upon the child's – based upon maintaining some type of flexibility for the child, the mother and father should have that kind of control. Based upon those findings, the material change of circumstances and the relationship of the parties has degenerated to the point where they are no longer able to work together, the Court's going to step in and mandate certain times for visitation. The Court believes it's in the best interest because, No. 1, it was a fairly bargained-for agreement between the parties to begin with.

> Secondly, the Court acknowledges that the grandparents have been a stable factor in the child's life. They do share a significant bond with the child, and they have the ability to visit the child and transport the child for extracurricular activities just like anyone else does.

> The Court's going to expand the visitation just a little bit, No. 1, to make it a smoother transition. No. 2, the Court is going to address some contempt issues here soon, and this can be considered a remedy for the contempt petitions. I will tell the Lovlaces don't get your hopes up too much. The fact is is [sic] that I'm not expanding the visitation to any significant degree for reasons I've already stated.

The trial court then modified the Agreed Order by requiring the Lovlaces' visitation to occur from 9:00 a.m. to 6:00 p.m., on the third Saturday of each month, except during the months of June, July, and August, when visitation would occur on the third weekend of each month, from 6:00 p.m. Friday to 6:00 p.m. Saturday. After allowing overnight visitation, the trial court eliminated the two-hour weekly visitation the Agreed Order had provided during the summer. The trial court declined to order Christmas visitation or any other summer visitation. The trial court also ordered the Copleys to provide the Lovlaces with seven days advance notice of any of the minor child's regularly scheduled activities that would take up more than half of the Lovlaces' visitation time. In such instances, the trial court granted the Lovlaces the right to notify Mrs. Copley of their wish to reschedule visitation for the fourth Saturday of the month.

With respect to the Lovlaces' petition for contempt against Mrs. Copley, the trial court declined to consider separately each allegation of contempt, finding it to be unnecessary. Nevertheless, the trial court found Mrs. Copley had willfully violated court orders on five separate occasions and therefore found her to be in civil contempt. The court declined to jail or fine Mrs. Copley and also denied the Lovlaces' request for make-up visitation. The trial court sanctioned Mrs. Copley by ordering her to pay the Lovlaces' attorney's fees, in the amount of $75,000, plus costs, but afforded Mrs. Copley an opportunity to object and request a hearing on this issue.

On July 19, 2010, before the trial court entered a final order, the Copleys filed an objection to the attorney's fees award and moved for a hearing. After a hearing on September 28, 2010, the trial court ruled from the bench, again declining to make specific factual findings on the contempt allegations. The trial court also ruled that it was not possible to separate the allegations of contempt or to award only the attorney's fees incurred pursuing the allegations found to constitute contempt. Thus, in awarding attorney's fees, the trial court looked at the case as a whole and reaffirmed its decision to sanction Mrs. Copley's contempt by ordering her to pay attorney's fees. Nonetheless, based on certain mathematical errors in the fee requests, as well as the testimony of the Lovlaces' second attorney indicating that fifty, rather than seventy-five, percent of his fees were attributable to the contempt allegations, the trial court reduced the attorney's fees award to $32,000.

On October 21, 2010, the trial court entered an order on the Lovlaces' fee request consistent with its bench ruling, and by an order entered October 29, 2010, the trial court granted the Copleys a stay of execution of the monetary portion of the judgment and set a bond in the amount of $10,000. On January 5, 2011, the trial court entered a final order, consistent with its June 29, 2010 bench ruling, on the Lovlaces' request to increase their visitation and the Copleys' request to terminate visitation. The January 5, 2011 order provides, in relevant part, as follows:

> 1. The [c]ourt finds that [the Lovlaces'] grandparent visitation rights arise from an *Agreed Order* dated May 15, 2006, entered by this [c]ourt establishing grandparent visitation pursuant to [Tennessee Code Annotated section] 36-6-306.
>
> 2. The court finds that at the time the *Agreed Order* was entered there was a clear basis for the establishment of grandparent visitation. . . . The [c]ourt is convinced that there was proof, then and now, that the grandparents had a significant enough bond to secure grandparent visitation. [I]t was, and remains, in the child's best interest to have visitation with the [Lovlaces].

3. The [c]ourt further finds that when the minor child was adopted by Kevin Copley that the [Lovlaces'] grandparent visitation rights were re-affirmed.

4. The [c]ourt finds that the biological mother, Beth Copley, was not an adoptive parent and [that] she had the ability and authority to continue to secure for grandparent visitation rights. Those rights were preserved in the *Final Order of Adoption* by which Kevin Copley became the child's legal father.

5. Beth Copley has petitioned this [c]ourt to terminate the [Lovlaces'] visitation rights. The [c]ourt finds, however, that there is nothing in the record to warrant terminating or further limiting the grandparents' rights.

6. The [Lovlaces] seek modification of the *Agreed Order Establishing Grandparent Rights* to increase the time they have with the minor child. The [c]ourt finds no basis in the record to modify the [Lovlaces'] visitation schedule to any significant degree.

7. Based upon the conduct of [Beth Copley], however, the [c]ourt does believe that a modification is necessary to secure the [Lovlaces] the regular visitation they are supposed to have under the *Agreed Order* and to remove the discretion from the [Copleys].

8. The [c]ourt does find that there has been a material change of circumstances and the relationship of the parties has degenerated to the point where they are no longer able to work together. The [c]ourt finds that it is necessary for the [c]ourt to mandate certain specific times for grandparent visitation to take the discretion out of the hands of the [Copleys] as to when the [Lovlaces] visit with the minor child.

9. The [c]ourt finds that it is in the best interest for the child to mandate certain specific times because the grandparent visitation was an agreement fairly bargained on [sic] between the parties.

. . . .

11. The [c]ourt finds that it is necessary to expand the visitation just a little bit to make a smoother transition.

Based on these findings, the trial court modified the May 15, 2006 Agreed Order and established the visitation schedule described above.

With respect to the Lovlaces' petition for contempt against Mrs. Copley, the January 5, 2011 order includes the following findings:

22. After consideration of the record, the court finds that the [Lovlaces] have proven, by a preponderance of the evidence, that Beth Copley is in willful, civil contempt for [not] following the [c]ourt's order in the following instances:

(a) The [c]ourt finds that in January of 2007, Beth Copley failed to provide at least five (5) days written notice for the January 7, 2007 visitation. The [c]ourt finds that the *Orders* were specific and that mother is in willful violation of Paragraph 3A of the *Agreed Order*.

(b) The [c]ourt finds that in February of 2007, three and one half hours were missed due to a gymnastics class that was not attended or was not regularly scheduled.

(c) The [c]ourt finds that Beth Copley's conduct constitutes willful, civil contempt.

(d) The [c]ourt finds that in June of 2007, the [Lovlaces'] visitation was missed without cause. [Beth Copley] is in willful civil contempt.

(e) In July 2007, [Beth Copley] scheduled visitation on a court date that the [Lovlaces] were required to attend. The [c]ourt finds that the [Beth Copley] was not operating in good faith and is in willful, civil contempt.

(f) The [c]ourt finds that in July, 2007 Beth Copley was in willful civil contempt of Paragraph 3I and 3J of the *Agreed Order* by her conduct. She is in willful civil contempt.

(g) Accordingly, the [c]ourt finds that Beth Copley is in willful violation of this [c]ourt's Order on five separate occasions.

(h) The [c]ourt finds that the appropriate sanction for [Beth Copley's] contempt is the award of attorney's fees which has been addressed by separate order.

-10-

(i) The [c]ourt finds that [Beth Copley] has engaged in contemptuous behavior and did not operate [at] all times in good faith.

(j) The costs will be taxed against the [Copleys].

The Lovlaces appealed. The Court of Appeals vacated the trial court's order concerning all matters related to the Lovlaces' visitation with the minor child. Lovlace v. Copley, No. M2011-00170-COA-R3-CV, 2012 WL 368221, at *1 (Tenn. Ct. App. Feb. 3, 2012), reh'g denied (Tenn. Ct. App. Feb. 22, 2012).

Judges Stafford, Highers, and Kirby unanimously concluded that the Lovlaces are grandparents within the meaning of the Grandparent Visitation Statute, see Tenn. Code Ann. § 36-6-306(e), and, as such, had standing to seek grandparent visitation, which was sufficient to provide the trial court with subject matter jurisdiction. Lovlace, 2012 WL 368221, at *7 (Stafford, J.); Id. at *19 (Highers, J., concurring in part and dissenting in part); Id. at *20 (Kirby, J., concurring in part and dissenting in part). Judges Stafford, Highers, and Kirby also unanimously concluded that the March 26, 2009 Final Order of Adoption did not void the Agreed Order affording the Lovlaces visitation with the minor child. Id. at *9-10 (Stafford, J.); id. at *19 (Highers, J., concurring in part and dissenting in part); id. at *20 (Kirby, J., concurring in part and dissenting in part). Judges Stafford, Highers, and Kirby further agreed that the trial court applied an incorrect standard when determining the Lovlaces' petition to modify and the Copleys' counter-petition to terminate grandparent visitation. Id. at *12 (Stafford, J.); id. at *19 (Highers, J., concurring in part and dissenting in part); id. at *24-26 (Kirby, J., concurring in part and dissenting in part). All three judges agreed that a party seeking modification or termination of court-ordered grandparent visitation must make a threshold showing of a material change in circumstances. Id. at *12-13 (Stafford, J.); id. at *20 (Highers, J., concurring in part and dissenting in part); id. at *24-26 (Kirby, J., concurring in part and dissenting in part). Judge Kirby alone opined that the material change in circumstances need not have been unanticipated at the time of the initial order awarding grandparent visitation. Id. at *24 (Kirby, J., concurring in part and dissenting in part).

A majority, Judges Stafford and Kirby, concluded that a grandparent seeking modification must establish that a material change in circumstances exists that presents a substantial risk of harm to the child if the modification is denied. Id. at *13 (Stafford, J.); id. at *25 (Kirby, J., concurring in part and dissenting in part). Judge Highers dissented on this issue and would have held that a grandparent seeking modification need not again make a showing of substantial harm to the child. Id. at *19-20 (Highers, J., concurring in part and dissenting in part). Rather, in addition to the threshold showing of material change in circumstances, Judge Highers opined that a grandparent need only show that the requested modification is in the child's best interests. Id.

A different majority, Judges Stafford and Highers, held that a parent seeking modification or termination of grandparent visitation must show that a material change in circumstances exists and that the requested modification or termination is in the child's best interests. Id. at *12 (Stafford, J.); id. at *19-20 (Highers, J., concurring in part and dissenting in part). Judge Kirby dissented on this point and opined that in all aspects of the proceeding to terminate or modify grandparent visitation, regardless of whether a parent or a grandparent initiates the proceeding, a rebuttable presumption exists that the parent's preferences and decisions are in the child's best interests. Id. at *26 (Kirby, J., concurring in part and dissenting in part). Consequently, according to Judge Kirby, in all modification and termination proceedings, grandparents retain the burden of showing that the denial of increased visitation, or the termination of visitation, would present a risk of substantial harm to the child. Id. Thus, Judge Kirby opined, to successfully oppose a petition to terminate visitation, grandparents must demonstrate that the denial of continued visitation would present a substantial risk of harm to the child. Id.

With respect to contempt, a majority, Judges Stafford and Highers, concluded that the trial court had not abused its discretion in finding Mrs. Copley in civil contempt. Id. at *18 (majority); id. at *19 (Highers, J., concurring in part and dissenting in part). Judge Kirby disagreed and opined that the trial court's perspective on contempt was necessarily skewed by its application of the incorrect standards on modification and termination of visitation. Id. at *26 (Kirby, J., concurring in part and dissenting in part). Judge Kirby further opined that, even in contempt proceedings, a rebuttable presumption exists that parental decisions are in a child's best interests. Id.

The Court of Appeals unanimously vacated the award of attorney's fees, with Judges Stafford and Highers concluding that the trial court failed to make sufficiently specific factual findings as to the amount of fees incurred prosecuting the contempt allegations against Mrs. Copley and remanding for the trial court to award only those fees associated with the prosecution of the contempt allegations. Id. at *1 (Stafford, J.); id. at *19 (Highers, J., concurring in part and dissenting in part). Judge Kirby agreed that the attorney's fees award should be vacated because she considered the contempt findings inappropriate. Id. at *26 (Kirby, J., concurring in part and dissenting in part). The Copleys filed a petition to rehear, asserting that the Court of Appeals' holding would permit an award of attorney's fees for contempt allegations not established by the proof. In the order denying the petition to rehear, the Court of Appeals clarified that the attorney's fees awarded on remand should be limited to the fees incurred prosecuting the five contempt findings the trial court made against Mrs. Copley. Lovlace v. Copley, No. M2011-00170-COA-R3-CV, 2012 WL 368221, at *29 (Tenn. Ct. App. Feb. 22, 2012) (Order Denying Petition for Rehearing).

-12-

We granted the Lovlaces' application for permission to appeal.

**Standard of Review**

Review of findings of fact by a trial court in civil actions is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); In re Taylor B.W., 397 S.W.3d 105, 112 (Tenn. 2013). A determination of visitation "often hinges on subtle factors such as the [parties'] demeanor and credibility during the trial proceedings." Battleson v. Battleson, 223 S.W.3d 278, 282 (Tenn. Ct. App. 2006). "When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony." Morrison v. Allen, 338 S.W.3d 417, 426 (Tenn. 2011).

Review of a trial court's determinations on issues of law, such as the existence of subject matter jurisdiction and statutory construction, is de novo, without any presumption of correctness. Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 895 (Tenn. 2011) (questions of law); Chapman v. Davita, Inc., 380 S.W.3d 710, 712-13 (Tenn. 2012) (subject matter jurisdiction); Mills v. Fulmarque, 360 S.W.3d 362, 366 (Tenn. 2012) (statutory construction). Review of a trial court's decision regarding visitation is governed by an abuse of discretion standard. Smallwood v. Mann, 205 S.W.3d 358, 361 (Tenn. 2006). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." Gonsewski v. Gonsewski, 350 S.W.3d 99, 105 (Tenn. 2011) (citing Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 176 (Tenn. 2011)). In determining whether the trial court abused its discretion, an appellate court "should presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." Id. at 105-06; see also Tenn. R. App. P. 13(d).

With respect to a trial court's findings of civil contempt, the factual issues of whether a party violated an order and whether a particular violation was willful, are reviewed de novo, with a presumption of correctness afforded the trial court's findings. Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth., 249 S.W.3d 346, 356-57 (Tenn. 2008). A trial court's decision to hold a person in civil contempt is reviewed using the abuse of discretion standard. Id. at 358.

## Analysis

### I. Preliminary Issues

#### *A. The Lovlaces' Standing to Sue*

The Copleys contend that the Lovlaces do not have standing to bring suit because they do not meet the definition of "grandparent" used in the Grandparent Visitation Statute. Tenn. Code Ann. § 36-6-306(e). The Lovlaces respond that this issue is waived because the Copleys failed to raise it in the trial court.

"When a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." Osborn v. Marr, 127 S.W.3d 737, 740 (Tenn. 2004). The Grandparent Visitation Statute applies only to persons who satisfy the statutory definition of the term "grandparent." See, e.g., Tenn. Code Ann. § 36-6-306(a) ("Any of the following circumstances, when presented in a petition for *grandparent* visitation . . . necessitates a hearing if such *grandparent* visitation is opposed by the custodial parent or parents." (emphasis added)); id. § 36-6-306(e) (defining "grandparent"). "As a result, a court does not have subject matter jurisdiction to hear a petition for grandparent visitation unless the party filing the petition has standing." Spears v. Weatherall, 385 S.W.3d 547, 549 (Tenn. Ct. App. 2012). Appellate courts must consider subject matter jurisdiction even if parties fail to raise or preserve the issue. Tenn. R. App. P. 13(b); In re Estate of Trigg, 368 S.W.3d 483, 488 n.2 (Tenn. 2012); Osborn, 127 S.W.3d at 740. Thus, notwithstanding the Copleys' failure to raise this issue in the trial court, or to list it in the appropriate section of their brief in this Court,[6] we will consider whether the Lovlaces lack standing, as this issue is interwoven with subject matter jurisdiction.

The Copleys' argument that the Lovlaces lack standing is based on Tennessee Code Annotated section 36-6-306(e), which provides:

> Notwithstanding any provision of law to the contrary, as used in this section and in § 36-6-307, with regard to the petitioned child, the word "grandparent" *includes, but is not limited to*:

---

[6] The issue section of the Copleys' brief states in relevant part only that "[t]he Lovlaces' court-ordered visitation should be terminated." Tennessee Rule of Appellate Procedure 27(b) requires an appellee to include in an appellate brief a statement of any issues the appellee wishes to raise in addition to those issues raised by the appellant. An appellee's failure to list issues in accordance with Rule 27(b) may result in waiver. See Hodge v. Craig, 382 S.W.3d 325, 335 (Tenn. 2012).

(1) A biological grandparent;

(2) The spouse of a biological grandparent; or

(3) A parent of an adoptive parent.

Tenn. Code Ann. § 36-6-306(e) (emphasis added).  According to the Copleys, because the Lovlaces have no biological connection to the minor child and because Mrs. Lovlace and Mr. Lovlace are the adoptive parent and stepparent, respectively, of the minor child's biological father, neither satisfies the foregoing statutory definition of "grandparent."  In response, the Lovlaces assert that they fall within the statutory definition of "grandparent" "by reason of common sense, logic, and constitutional considerations."  We conclude, as did the Court of Appeals, that the definition of "grandparent" in the Grandparent Visitation Statute encompasses the Lovlaces.

Resolution of this issue requires the construction of a statute.  We have recently reiterated the familiar rules of statutory construction.

When interpreting a statute, courts must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning.  Our task is to examine the text of the statute and, if the language used is unambiguous, we simply apply the plain meaning of the words used in the statute.  As we recently observed, courts must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended to give each of these words its full effect.  Every word in a statute is presumed to have meaning and purpose.  If, after examining the text of the statute, it becomes clear the statute is ambiguous, we may reference the broader statutory scheme, the history of the legislation, or other sources to discern its meaning.  However, these non-codified external sources cannot provide a basis for departing from clear codified statutory provisions.

Garrison v. Bickford, 377 S.W.3d 659, 663 (Tenn. 2012) (citations and internal quotation marks omitted).

Tennessee Code Annotated section 36-6-306(e) is unambiguous.  Its use of the phrase "includes, but is not limited to," in conjunction with three categories of persons who qualify as a "grandparent," clearly evinces the Legislature's intent *not* to limit the statutory definition of "grandparent" to only the three listed categories.  The phrases, "includes, but is not limited to" and "including but not limited to," are generally deemed to be terms of enlargement, not

of restriction. See Owings v. Owings, No. W2005-01233-COA-R3-CV, 2006 WL 3410702, at *8 (Tenn. Ct. App. Nov. 27, 2006) (interpreting the Child Support Guidelines' use of the phrase "including but not limited to" as supporting a broad definition of gross income, not limited to the enumerated categories); Raybon v. McElrath, No. M2001-01295-COA-R3-JV, 2003 WL 22401276, at *2 (Tenn. Ct. App. Oct. 22, 2003) (same); see also Moore v. Nashville Elec. Power Bd., 72 S.W.3d 643, 650 n.5 (Tenn. Ct. App. 2001) (interpreting the Tennessee Human Rights Act's use of the phrase "including but not limited to" as providing an "extensive" list of remedies). Indeed, even when "including" is used alone in conjunction with a list of items, it serves as a term of enlargement, not one of restriction. "When a statutory definition states that it 'includes' specific items, we have held that the 'enumerated items are illustrative, not exclusive.'" State v. Marshall, 319 S.W.3d 558, 561 (Tenn. 2010) (quoting Gragg v. Gragg, 12 S.W.3d 412, 415 (Tenn. 2000)).

The statutory definition of "grandparent" includes two categories that do not require proof of a biological relationship with the child. Mrs. Lovlace, as the adoptive parent of the minor child's biological father, and Mr. Lovlace, as the stepparent of the minor child's biological father, qualify as "grandparents" under the expansive definition of the term "grandparent" used in the Grandparent Visitation Statute. Thus, we hold that the Lovlaces have standing and, as a result, the trial court had subject matter jurisdiction.[7]

*B. Effect of Tennessee Code Annotated Section 36-1-121(f)*
*and the Minor Child's Adoption*

The Copleys also assert that the reservation of the Lovlaces' visitation rights in the March 26, 2009 Final Order of Adoption was void and of no effect. According to the Copleys, Mr. Copley's adoption of the minor child served to terminate the Lovlaces' visitation rights pursuant to the Grandparent Visitation Statute.[8]

---

[7] In reaching this holding, we have not considered the extent or quality of the Lovlaces' relationship with the minor child, as this is not a relevant consideration in determining whether a petitioner satisfies the statutory definition of "grandparent." Tenn. Code Ann. § 36-6-306(e). This consideration becomes relevant to determining substantial harm and the best interests of the child only after a petitioner has established standing by satisfying the statutory definition of "grandparent." Id.

[8] Once again, this issue is not listed in the issue section of the Copleys' brief. Because of the significance of the issue and because the Copleys' assertion, if correct, would render moot many of the remaining issues, we will address the matter as a preliminary issue, rather than in the context of the Copleys' argument that the Lovlaces' visitation should be terminated.

The March 26, 2009 Final Order of Adoption was not appealed; thus, it became final and entitled to full force and effect "regardless of whether it was entered in error, unless and until a party obtains dissolution of the order through operation of the judicial system of review." In re Estate of Rinehart, 363 S.W.3d 186, 189 (Tenn. Ct. App. 2011) (alterations and internal quotation marks omitted). By raising this challenge in the Hickman County Chancery Court proceeding, the Copleys essentially mounted a collateral attack on the Lewis County Final Order of Adoption. "A collateral attack is an attempt to avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." Andrews v. Fifth Third Bank, 228 S.W.3d 102, 107 (Tenn. Ct. App. 2007) (internal quotation marks omitted).

> If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack upon it . . . . On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important, or even necessary to its success, then the attack upon the judgment is collateral.

In re Estate of Rinehart, 363 S.W.3d at 190 n.6 (quoting Gentry v. Gentry, 924 S.W.2d 678, 679-80 (Tenn. 1996)). "Only a void order may be collaterally attacked in another forum." Id. at 190. An order is void, and subject to collateral attack, only where the trial court lacked subject matter jurisdiction, ruled on an issue wholly outside of the pleadings, or lacked personal jurisdiction over the party complaining about the order. Id.; Andrews, 228 S.W.3d at 107. Neither the March 26, 2009 Final Order of Adoption nor the specific provision reserving the Lovlaces' visitation rights is void. The Chancery Court for Lewis County did not lack subject matter jurisdiction, did not rule on matters wholly outside the pleadings, and did not lack jurisdiction over the minor child or the Copleys.

According to the Copleys, however, their collateral attack is appropriate because a provision of the Adoption Statute, see Tenn. Code Ann. § 36-1-121(f), conflicts with a provision of the Grandparent Visitation Statute, see Tenn. Code Ann. § 36-6-306(d)(1), which addresses the effect of an adoption on visitation rights. The Copleys contend that the Adoption Statute takes precedence over the Grandparent Visitation Statute, and as a result, renders void the provision of the Final Order of Adoption reserving the Lovlaces' visitation rights. We disagree.

The Copleys' contentions require a determination of the proper interplay between these two statutory provisions. The relevant provision of the Adoption Statute states:

The adoptive parents of a child shall not be required by any order of the adoption court to permit visitation by any other person, nor shall the order of the adoption court place any conditions on the adoption of the child by the adoptive parents. *Any provision in an order of the court or in any written agreement or contract between the parent or guardian of the child and the adoptive parents requiring visitation or otherwise placing any conditions on the adoption shall be void and of no effect whatsoever;* provided, that nothing under this part shall be construed to prohibit "open adoptions" where the adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child; and provided further, that the permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons.

Tenn. Code Ann. § 36-1-121(f) (emphasis added).

The relevant provision of the Grandparent Visitation Statute declares:

(1) *Notwithstanding the provisions of § 36-1-121*, if a relative or stepparent adopts a child, the provisions of this section apply.

(2) If a person other than a relative or a stepparent adopts a child, any visitation rights granted pursuant to this section before the adoption of the child shall automatically end upon such adoption.

Tenn. Code Ann. § 36-6-306(d) (emphasis added).

In determining whether these statutory provisions conflict, and in resolving any existing conflict, we are guided by the following rules of statutory construction. First, a construction which places one statute in conflict with another is to be avoided, and we must endeavor to resolve any possible conflict between statutes in favor of each other in order to provide a harmonious operation of laws. Graham v. Caples, 325 S.W.3d 578, 582 (Tenn. 2010). Second, "[w]here a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision." Id. Finally, courts may presume that the General Assembly is aware of its own prior enactments and knows the state of the law when it enacts a subsequent statute. Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 527 (Tenn. 2010).

Applying the foregoing principles, we conclude that the statutes do not conflict. The relevant provision of the Adoption Statute was enacted in 1995. The relevant provision of the Grandparent Visitation Statute was enacted two years later. Not only is the Grandparent Visitation Statute the more specific and more recently enacted statutory provision, its statutory text clearly and unambiguously carves out a narrow, limited exception, in the case of grandparent visitation and stepparent adoption, to the more general rule stated in the Adoption Statute. Mr. Copley was the minor child's stepparent at the time of the adoption. We conclude, therefore, that the exception in the Grandparent Visitation Statute, specifically Tennessee Code Annotated section 36-6-306(d)(1), controls. Thus, Mr. Copley's adoption of the minor child did not terminate the visitation rights the Lovlaces received pursuant to the Agreed Order. The provision of the Final Order of Adoption reserving the Lovlaces' visitation rights is not void and is consistent with the exception for stepparent adoptions in the Grandparent Visitation Statute. Tenn. Code Ann. § 36-6-306(d)(1).[9]

## C. Denial of Visitation

The Copleys assert that because the record includes no finding that they ever denied the Lovlaces visitation with the minor child, the Grandparent Visitation Statute was not implicated.[10] We do not agree.

The Grandparent Visitation Statute expressly provides that an initial petition for grandparent visitation may only be filed "if such grandparent visitation is opposed by the custodial parent or parents." Tenn. Code Ann. § 36-6-306(a). Unlike divorcing or unmarried parents who may agree that visitation is appropriate but disagree merely about the details of a visitation schedule, a petitioner relying upon the Grandparent Visitation Statute must establish in the first instance that the custodial parent opposed or denied grandparent visitation. Huls v. Alford, No. M2008-00408-COA-R3-CV, 2008 WL 4682219, at *8 (Tenn. Ct. App. Oct. 22, 2008). "The term 'opposed' includes situations both where visitation is

---

[9] Although not necessary to our analysis, we further note that Mrs. Copley, as the minor child's biological parent, was not within the scope of the protection afforded by the Adoption Statute, Tenn. Code Ann. § 36-1-121(f), as she was not an "adoptive parent[]," and that she too agreed to the reservation of the Lovlaces' visitation rights in the March 26, 2009 Final Order of Adoption. We also note that the Agreed Order expressly contemplated the Lovlaces' continued visitation with the minor child even if Mr. Rochelle's parental rights were subsequently terminated, as occurred by virtue of his consent to Mr. Copley's adoption of the minor child.

[10] Again, the Copleys fail to list this issue in the appropriate section of their brief. Because of the significance of this issue and because the Copleys' assertion, if correct, would render moot many of the remaining issues in this appeal, we address it as a preliminary matter, rather than in the context of their argument that the Lovlaces' visitation should be terminated.

denied totally and where visitation is technically not opposed, but the frequency and/or conditions imposed by the parents on visitation are such that it equates to a denial of visitation." Id.; see also Angel v. Nixon, No. M2010-00554-COA-R3-CV, 2010 WL 4483915, at *3 (Tenn. Ct. App. Nov. 8, 2010); Wilson v. Gladden, No. E2008-02283-COA-R3-CV, 2009 WL 2176460, at *2 (Tenn. Ct. App. July 22, 2009). The Grandparent Visitation Statute "cannot be used by grandparents who think they are entitled to more or different visitation in the absence of a finding that the parents actually or effectively 'opposed' visitation." Huls, 2008 WL 4682219, at *8; see also Angel, 2010 WL 4483915, at *3 n.2. We recognize, therefore, that parties must have experienced problems in cooperation in order to invoke the Grandparent Visitation Statute in the first place.

The Copleys now challenge the Agreed Order because it allegedly lacks an explicit finding of denial of, or opposition to, grandparent visitation. This contention amounts to a collateral attack on a final order, which no party previously sought to modify or set aside. As we have already noted, "[o]nly a void order may be collaterally attacked in another forum." In re Estate of Rinehart, 363 S.W.3d at 190. An order is void and subject to collateral attack only where the trial court lacked subject matter jurisdiction, ruled on an issue wholly outside of the pleadings, or lacked jurisdiction over the party complaining about the order. Id.; Andrews, 228 S.W.3d at 107. The Agreed Order includes none of these defects, nor do the Copleys even so contend. The Agreed Order therefore is not subject to collateral attack.

Moreover, the factual basis of the Copleys' challenge is without merit. While the Agreed Order lacks an explicit finding that the Copleys opposed grandparent visitation, the Agreed Order expressly granted the Lovlaces visitation *pursuant to the Grandparent Visitation Statute*. The Lovlaces' petition clearly alleged opposition. The parties, both represented by counsel, appeared on the hearing date set to contest the allegations. They then entered into an agreement. Implicit therein was the Copleys' acknowledgment that the prerequisites of the Grandparent Visitation Statute had been satisfied. Additionally, the trial court found in its January 5, 2011 Order, which is the subject of this appeal, that "at the time the *Agreed Order* was entered, there was a clear basis for the establishment of grandparent visitation." The evidence in the record does not preponderate against this finding.

The Copleys appear also to contend that, when petitioning the trial court to modify visitation, the Lovlaces were subject to a renewed requirement that they demonstrate a denial of, or opposition to, visitation.[11] The Grandparent Visitation Statute does not contain any provision governing modification of court-ordered grandparent visitation. As a result, the statute does not mandate, or even address, whether grandparents must prove opposition to, or

_____

[11] Indeed, the only instances of additional voluntary visitation to which the Copleys point in their brief all occurred *after* the Agreed Order.

denial of, visitation as a prerequisite when seeking modification of court-ordered visitation. Even assuming such a showing is required, the Copleys' own counter-petition for termination satisfies this showing and evidences their opposition to the Lovlaces' visitation.[12]

## II. Modification or Termination of Grandparent Visitation

This appeal involves competing petitions for modification and termination of previously court-ordered grandparent visitation. Tennessee's Grandparent Visitation Statute in no way addresses modification or termination of court-ordered grandparent visitation. Thus, we must determine, as an issue of first impression, the appropriate burdens of proof and standards to be applied where a grandparent and a parent seek to modify and terminate, respectively, court-ordered grandparent visitation.

The Lovlaces petitioned to increase their court-ordered visitation, and the Copleys petitioned to terminate the Lovlaces' visitation. The record indicates that the matter was litigated in the trial court pursuant to the burdens of proof and standards generally applicable to modification of visitation between two parents. See Tenn. Code Ann. § 36-6-101(a)(2)(c) (2010). As already noted, the Court of Appeals disagreed, in three separate opinions, as to the burdens of proof and standards to be applied in these circumstances. As might be expected, the Lovlaces now urge this Court to adopt the burdens of proof and standards applied by the trial court. In contrast, the Copleys urge this Court to adopt, in part, the burdens of proof and standards adopted by a majority of the Court of Appeals, which would require grandparents seeking modification of visitation to satisfy a higher standard than parents seeking modification or termination of grandparent visitation. The Copleys further urge this Court to adopt the additional standard applied by one member of the Court of Appeals, and hold that, in all proceedings involving grandparent visitation, a rebuttable presumption exists that parental preferences and decisions are in the best interests of children.

For the reasons articulated below, we hold that parties—parents and grandparents alike—seeking modification or termination of court-ordered grandparent visitation must make two showings. First, a party petitioning for modification or termination must demonstrate by a preponderance of the evidence a material change in circumstances. If this showing is made, the party must next prove, by a preponderance of the evidence, that the requested modification or termination of visitation is in the best interests of the child. To determine whether

---

[12] We note that the General Assembly has amended the Grandparent Visitation Statute, effective July 1, 2011, to include as one of the factors courts may consider in determining the best interests of the child "[a]ny unreasonable deprivation of the grandparents' opportunity to visit with the child by the child's parents or guardian, including denying visitation of the minor child to the grandparent for a period exceeding ninety (90) days." Tenn. Code Ann. § 36-6-307(8) (Supp. 2012).

modification or termination is in the best interests of the child, courts shall consider the factors enumerated in the Grandparent Visitation Statute. Tenn. Code Ann. § 36-6-307.

The divided opinion of the Court of Appeals in this case is representative of the divide that exists across the country. As the authors of one recent article noted, there exists a "current nationwide cacophony of grandparent and third-party visitation laws across the United States. The landscape of these laws across the country is as varied as the scenery itself from Maine to Alaska. There is no uniformity among state laws; and there is no authority of guidance for state legislatures." Daniel R. Victor and Keri L. Middleditch, Grandparent Visitation: A Survey of History, Jurisprudence, and Legislative Trends Across the United States in the Past Decade, 22 J. Am. Acad. Matrim. Law. 391 (2009). "[T]he entire nation is a virtual 'wild west' of wide-ranging trial court interpretations and appellate court decisions that attempt to reconcile the language in the one United States Supreme Court case that has touched upon this issue." Id. at 391-92. The jurisprudence of other jurisdictions, therefore, offers limited guidance on the issue in this appeal. Moreover, the lone United States Supreme Court decision, Troxel v. Granville, 530 U.S. 57 (2000), like Tennessee's Grandparent Visitation Statute and our own prior jurisprudence, addresses only initial requests for grandparent visitation, not requests for modification or termination of court-ordered grandparent visitation. Nonetheless, some guidance can be gleaned from our own jurisprudence, the lone United States Supreme Court decision, and, to a lesser extent, the jurisprudence of other jurisdictions.

*A. Burdens of Proof and Standards in Initial Grandparent Visitation Proceedings*

We begin with the text of the Grandparent Visitation Statute, which, in pertinent part, provides:

(a) Any of the following circumstances, *when presented in a petition for grandparent visitation* to the circuit, chancery, general sessions courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:

(1) The father or mother of an unmarried minor child is deceased;

(2) The child's father or mother are divorced, legally separated, or were never married to each other;

(3) The child's father or mother has been missing for not less than six (6) months;

(4) The court of another state has ordered grandparent visitation;

(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or

(6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance of the relationship, this relationship was severed by the parent or parents for reasons other than abuse or presence of a danger of substantial harm to the child, and severance of this relationship is likely to occasion substantial emotional harm to the child.

(b)(1) *In considering a petition for grandparent visitation*, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

(B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

(2) For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:

-23-

(A) The child resided with the grandparent for at least six (6) consecutive months;

(B) The grandparent was a full-time caretaker of the child for a period of not less than six (6) consecutive months; or

(C) The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

(3) A grandparent is not required to present the testimony or affidavit of an expert witness in order to establish a significant existing relationship with a grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child. Instead, the court shall consider whether the facts of the particular case would lead a reasonable person to believe that there is a significant existing relationship between the grandparent and grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child.

(4) For the purposes of this section, if the child's parent is deceased and the grandparent seeking visitation is the parent of that deceased parent, there shall be a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent.

(c) *Upon an initial finding of danger of substantial harm to the child*, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

Tenn. Code Ann. § 36-6-306 (2010) (emphasis added).[13]

---

[13] Grandparent visitation was first provided for by the General Assembly in 1971. See Tenn. Code Ann. § 36-1101 (Supp. 1972). The Grandparent Visitation Statute subsequently was amended on numerous occasions. See, e.g., Tenn. Code Ann. § 36-1101 (Supp. 1975); Tenn. Code Ann. § 36-6-301 (Supp. 1985); Tenn. Code Ann. §§ 36-6-306 and -307 (Supp. 1997); Tenn. Code Ann. §§ 36-6-306 and -307 (Supp. 2000); Tenn. Code Ann. § 36-6-306 (2010); Tenn. Code Ann. § 36-6-307 (Supp. 2012). As already explained, quotations and citations in this opinion are to the current version of the Grandparent Visitation Statute, the language of which is in all relevant respects the same as that of the statute in effect at the time of the proceedings in the trial court. We need not and do not address amendments adopted subsequent to the trial court proceedings because none affects this Court's determination of the appropriate burdens and standards in cases involving petitions to modify or terminate court-ordered grandparent visitation.

The Grandparent Visitation Statute next enumerates the factors that courts must consider when initially determining whether grandparent visitation is in the best interests of a child.

> In determining the best interests of the child under § 36-6-306, the court shall consider all pertinent matters, including, but not necessarily limited to, the following:
>
> (1) The length and quality of the prior relationship between the child and the grandparent and the role performed by the grandparent;
>
> (2) The existing emotional ties of the child to the grandparent;
>
> (3) The preference of the child if the child is determined to be of sufficient maturity to express a preference;
>
> (4) The effect of hostility between the grandparent and the parent of the child manifested before the child, and the willingness of the grandparent, except in case of abuse, to encourage a close relationship between the child and the parent or parents, or guardian or guardians of the child;
>
> (5) The good faith of the grandparent in filing the petition;
>
> (6) If the parents are divorced or separated, the time-sharing arrangement that exists between the parents with respect to the child; and
>
> (7) If one (1) parent is deceased or missing, the fact that the grandparents requesting visitation are the parents of the deceased or missing person.

Tenn. Code Ann. § 36-6-307(1)-(7) (Supp. 2012).[14]

The statutory requirement of "an initial finding of danger of substantial harm to the child,"[15] before consideration of the child's best interests, is a codification of this Court's holding in Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993). In Hawk, this Court declared the Grandparent Visitation Statute then in effect, which allowed courts to order grandparent

_____

[14] Again, as is evident, the statute does not by its terms address modification or termination of court-ordered grandparent visitation.

[15] Tenn. Code Ann. § 36-6-306(c).

visitation based solely upon a finding that such visitation was in the child's best interest, unconstitutional under article I, section 8 of the Tennessee Constitution as applied to a married couple whose fitness as parents was unchallenged. Id. at 577. In light of the right of privacy afforded by the Tennessee Constitution, the Hawk Court concluded that, "when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit." Id. "[T]o prevent judicial second-guessing of parental decisions," the Hawk Court required courts considering a request for grandparent visitation to "make an initial finding of harm to the child before evaluating the 'best interests of the child.'" Id. at 581.

Three years later, this Court extended the holding of Hawk, requiring a showing of substantial harm, from the context of the "intact, nuclear family with fit married parents," id. at 577, to a grandparent visitation case in which the child's biological parents were divorced and the child had been adopted by her stepfather, Simmons v. Simmons, 900 S.W.2d 682 (Tenn. 1995).

Seven years after Hawk, the United States Supreme Court addressed grandparent visitation. In Troxel, the Supreme Court considered a federal constitutional challenge to a Washington state statute, which allowed anyone to petition for visitation with a child at any time and authorized courts to grant visitation solely on the basis of the child's best interests, without affording any deference to parental decisions as to visitation. A plurality of the Supreme Court held in Troxel that the Washington state statute, as applied to the case before it, violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution by imposing an unconstitutional infringement on the parents' fundamental liberty interest in the care, custody, and control of their children. Troxel, 530 U.S. at 65, 67, 73. The plurality further held that "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." Id. at 70. The plurality declined, however, to consider whether "the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a precedent to granting visitation." Id. at 73. As the plurality explained, "[w]e do not, and need not, define today the precise scope of the parental due process right in the visitation context." Id.

The requirement of an initial finding of substantial harm enunciated in Hawk, and subsequently codified in the Grandparent Visitation Statute, imposes a more specific, and arguably stricter, standard than the "special weight" requirement enunciated by the plurality in Troxel. See, e.g., Troxel, 530 U.S. at 96 (Kennedy, J., dissenting). Showing substantial harm is the specific and sole manner in which grandparents in this State may overcome the constitutional deference initially afforded parental decisions regarding grandparent visitation. Hawk, 855 S.W.2d at 581; Angel, 2010 WL 4483915, at *3 n.3.

*B. Proceedings to Modify or Terminate Grandparent Visitation*

As already noted, the Grandparent Visitation Statute, Hawk, and Troxel all addressed initial requests for visitation, not petitions to modify or terminate court-ordered grandparent visitation. Although we have not before been called upon to address the appropriate burdens of proof and standards to be applied to petitions for modification of grandparent visitation, this Court has addressed these issues in the context of a grandparent custody order. Blair v. Badenhope, 77 S.W.3d 137 (Tenn. 2002).

In Blair, the child's biological father petitioned the court to modify a prior consent order, which had granted custody of the child to her maternal grandmother. In seeking modification, the father asserted a material change in circumstances and alleged that he had a superior parental right to the custody of his daughter, pointing out that he had never been adjudged to be an unfit parent. Id. at 139-40. In a four-to-one decision, the Blair Court rejected the father's reliance on the superior parental rights doctrine. The majority held that "a natural parent cannot generally invoke the doctrine of superior parental rights to modify a valid order of custody, even when that order resulted from the parent's voluntary consent to give custody to the non-parent." Id. at 139. "Instead, a natural parent seeking to modify a custody order that grants custody to a non-parent must show that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." Id. In so holding, the majority acknowledged that "the Tennessee Constitution protects the fundamental right of natural parents to have the care and custody of their children." Id. at 141. The Blair majority emphasized, however, that unlike prior cases addressing the rights of parents to the care and custody of their children, Blair did not "involve the standards applicable in making an initial award of child custody between a parent and a non-parent. Rather, we are asked to address whether our Constitution enables parents to assert the superior parental rights doctrine *in order to modify a valid court order awarding custody to a non-parent*." Id. (emphasis added). The majority viewed this distinction as critically important, explaining:

> Though we have broadly recognized that the right of parental privacy in this state is fundamental, nothing in the language of our Constitution, nor in the volumes of our case law, suggests that the superior rights doctrine should assist a parent to obtain custody of a child when a valid court order properly transferred custody from that parent in the first instance. Nor is there any suggestion from these sources that our right to privacy extends so far as to warrant application of the superior rights doctrine even when that valid order results from the natural parent voluntarily consenting to give custody of the child to a non-parent. Because all of our prior cases discussing awards of custody to a natural parent from a non-parent have been those in which the initial transfer of

custody from the natural parent was not accomplished with a valid court order or was not consensual, these cases cannot be properly used to "say what the law is" on this issue in Tennessee.

Id. at 143 (citations omitted). After examining cases from other jurisdictions, the Blair majority summed up its conclusions:

> As these cases demonstrate, parents in the initial custody proceedings enjoy a strong presumption that they are entitled to the physical custody of their children. *However, having once protected the rights of natural parents to the care and custody of their children, no constitutional principle demands that natural parents again be afforded a presumption of superior rights in a subsequent modification proceeding. Of course, where an initial order does not exist, or is otherwise invalid, then the Constitution requires a court to apply the superior rights doctrine.* However, because these circumstances do not exist in this case, we disagree that the Tennessee Constitution compels application of that doctrine in the face of a lawful and valid court order vesting custody of [the child] in her grandmother.

Id. at 146 (emphasis added). The majority also summarized its conclusions, based on the law of other jurisdictions, regarding the effect of a parent's voluntary consent to the transfer of custody on the parent's ability later to rely on the presumption of superior parental rights.

> *As these cases powerfully demonstrate, a parent's voluntary consent to cede custody to a non-parent defeats the ability of that parent to later claim superior parental rights in a subsequent proceeding to modify custody.* Presuming that a parent is afforded the opportunity to assert superior parental rights in the initial custody proceeding, then the parent's voluntary transfer of custody to a non-parent, with knowledge of the consequences of that transfer, effectively operates as a waiver of these fundamental parental rights. Under these circumstances, therefore, the Constitution does not again entitle the natural parent to assert superior parental rights to modify a valid custody order, *even if no court has previously found the natural parent to be unfit.*

Id. at 147-48 (emphasis added).

The Blair majority then announced its holding concerning the burdens and standards that apply between a parent and a grandparent in custody modification proceedings.

Based on our prior case law interpreting [a]rticle I, section 8 in this context, and given the overwhelming authority from other jurisdictions on this issue, we conclude that our Constitution does not accord natural parents a presumption of superior rights to modify an existing and valid order of custody, even when that order results from the parent voluntarily agreeing to give custody to the non-parent. Though strong in many respects, no aspect of the fundamental right of parental privacy is absolute, and a parent who is given the opportunity to rely upon the presumption of superior rights in an initial custody determination may not again invoke that doctrine to modify a valid custody order. *Absent proof of the custody order's invalidity or proof that the parental rights were not protected in the initial custody proceeding, the child's interest in a stable and secure environment is at least as important, and probably more so, than the parent's interest in having custody of the child returned.*

Accordingly, we hold that a natural parent is not generally entitled to invoke the doctrine of superior rights to modify a valid custody order awarding custody to a non-parent. *Instead, in the absence of extraordinary circumstances—for instance, the natural parent was not afforded an opportunity to assert superior parental rights in the initial custody proceeding; the custody order is invalid on its face; the order is the result of fraud or procedural illegality; or the order grants only temporary custody to the non-parents—a trial court should apply the standard typically applied in parent-vs-parent modification cases:* that a material change in circumstances has occurred, which makes a change in custody in the child's best interests. As in all other cases, the burden of establishing these factors rests upon the party seeking the change in custody.

Id. at 148 (emphasis added) (citations omitted).

In reaching this holding, the Blair majority rejected the dissent's suggestion, based upon Troxel, that the majority had improperly failed to acknowledge the presumption that fit parents act in the best interests of their children. Id. at 149. The Blair majority criticized the dissenting opinion, stating:

In our view, the dissent gives too little weight to the interests of the child in a stable and secure environment, and it risks subjecting the child to the whims and caprice of a parent. Indeed, if, as the dissent maintains, a parent's voluntary decision to give custody to a non-parent is made with the best

-29-

interests of the child as the paramount factor, can we not also suppose that the best interests of the child should again be the paramount factor when deciding whether custody should be returned to the natural parent? We see no compelling reason why the Constitution would command otherwise, provided that the rights of the parent were protected in the initial determination.

Id. at 149 (citations and internal quotation marks omitted). The Blair majority also reasoned that applying the superior parental rights doctrine in custody modification proceedings would, in effect,

create a situation analogous to a show-cause process in which the custodial non-parent would have to show cause why the child should not be returned . . . even in the face of a valid order transferring custody away from that parent . . . unless the child's custodian can show that a change in custody would result in substantial harm to the child.

Id. at 149. The majority believed that "such a process would effectively render existing orders of custody to non-parents practically worthless" and create "practical problems for the administration of justice." Id.

We find the analysis, reasoning, and conclusions of the Blair majority persuasive and equally applicable to proceedings to modify or terminate court-ordered grandparent visitation. Thus, we conclude that the Tennessee Constitution does not afford parents a presumption of superior rights in proceedings to modify or terminate court-ordered grandparent visitation. In the absence of extraordinary circumstances—for instance, the parents were not afforded an opportunity to assert superior parental rights in the initial proceeding; or the order is facially invalid; or the order resulted from fraud or procedural illegality—a trial court should apply the standards and burdens typically applied in parent-vs-parent modification cases. Having once afforded parents the opportunity to rely upon the protection of the presumption of superior rights to the care, custody, and control of their children in the initial grandparent visitation proceeding, no constitutional principle demands that parents again be afforded a presumption of superior rights in a subsequent grandparent visitation modification proceeding—whether the subsequent modification proceeding is initiated by the parents or by the grandparents.

As in Blair, our conclusion remains the same, even when, as here, grandparent visitation rights derive from an agreed order. The judicial system favors the resolution of disputes by agreement between the parties. Harbour v. Brown ex rel. Ulrich, 732 S.W.2d 598, 599 (Tenn. 1987); Kelly v. Walker, 346 S.W.2d 253, 255 (Tenn. 1961); Kittrelle v. Philsar Dev. Co., 359 S.W.2d 837, 844 (Tenn. Ct. App. 1962); City of New Johnsonville v. Handley,

No. M2003-00549-COA-R3-CV, 2005 WL 1981810, at *10 (Tenn. Ct. App. Aug. 16, 2005) ("Consent decrees, compromise and settlement agreements, and agreed orders are favored by the courts and represent the achievement of an amicable result to pending litigation."). "A consent decree is a contract made final and binding upon the parties by the approval of the court." City of Shelbyville v. State ex rel. Bedford Cnty., 415 S.W.2d 139, 144 (Tenn. 1967); Clinchfield Stone Co. v. Stone, 254 S.W.2d 8, 13 (Tenn. Ct. App. 1952). An agreed order signed by the parties involved has been described as "about the most binding of agreements that can be made." Bringhurst v. Tual, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980) (citing Smelcer v. Broyles, 465 S.W.2d 355, 356 (Tenn. 1971); Boyce v. Stanton, 83 Tenn. 346, 375-76 (1885)).

We recognize that Blair involved a custody modification proceeding between a parent and a grandparent, whereas this case involves a proceeding between a parent and a grandparent to modify or terminate grandparent visitation. Id. at 144, 148. Nonetheless, this difference does not undermine the rationale of Blair or render its reasoning inapposite. As we have recently recognized, "[v]isitation rights arise from the right of custody and are controlled by the same constitutional protections." Smallwood, 205 S.W.3d at 362-63 (citations omitted); see also Rennels v. Rennels, 257 P.3d 396, 401-02 (Nev. 2011) (holding that the standard applicable in custody modification cases also applies to grandparent visitation modification cases).

In light of the foregoing principles, we hold that when a grandparent or a parent initiates a proceeding to modify or terminate court-ordered grandparent visitation, the burdens of proof and the standards to be applied are the same as those typically applied in parent-vs-parent visitation modification cases. The burden of proof is upon the party seeking modification or termination to demonstrate, by a preponderance of the evidence, that a material change in circumstances has occurred which makes the requested modification or termination of grandparent visitation in the child's best interests. In determining the best interests of the child, courts shall consider the factors enumerated in the Grandparent Visitation Statute. Tenn. Code Ann. § 36-6-307.

Our holding should not be viewed as retreating from prior decisions recognizing the fundamental right of parents to the care and custody of their children. A parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions. Troxel, 530 U.S. at 65; Hawk, 855 S.W.2d at 578-79.

> The relations which exist between parent and child are sacred ones . . . . The right to the society of the child exists in its parents; the right to rear it, to its custody, to its tutorage, the shaping of its destiny, and all of the consequences that naturally follow from the relationship are inherently in the natural parents . . . .

In re Knott, 197 S.W. 1097, 1098 (Tenn. 1917); see also Hawk, 855 S.W.2d at 577-78 (reiterating these principles). We instead reaffirm the principle, first announced in Hawk and now codified in the Grandparent Visitation Statute, that in initial proceedings to determine grandparent visitation, parents must be afforded the opportunity to rely upon the protection of the presumption of superior parental rights. To overcome this presumption, grandparents must establish that denying them visitation would result in substantial harm to the child and that grandparent visitation would be in the child's best interests. An initial award of grandparent visitation is not a negative reflection upon parental competence or fitness; rather, it is a finding that a child already has such a significant relationship with a grandparent that the child would be substantially harmed if visitation with grandparents ceased, even if the parents and the grandparents are unable to agree. Even when grandparents satisfy the initial requirements necessary to obtain visitation, the visitation schedule must be carefully crafted *both* to afford grandparents the visitation necessary to avoid substantial harm to the child *and* to minimize, to the extent possible, interference with the parent-child relationship.

Once grandparents have obtained court-ordered visitation, however, the presumption of superior parental rights does not apply in proceedings to modify or terminate grandparent visitation. Declining to apply the presumption of superior parental rights in a modification proceeding "not only gives deference to a court's order, but it also promotes the important policy goal of stability for the child." Rennels, 257 P.3d at 401-02; see also Blair, 77 S.W.3d at 148 (stating that in proceedings to modify custody "the child's interest in a stable and secure environment is at least as important, and probably more so, than the parent's interest in having custody of the child returned").

*C. Application of Burdens and Standards to This Case*

The Copleys first contend that because the Agreed Order includes no finding of a risk of substantial harm, the presumption of superior parental rights has not been overcome and should be applied in this proceeding. We do not agree.

The Copleys were represented by counsel in the initial proceeding when the Lovlaces sought grandparent visitation, and, at that time, the law regarding the Copleys' entitlement to the presumption of superior parental rights in initial grandparent visitation proceedings was well-established by Hawk, Troxel, and Blair, as well as the Grandparent Visitation Statute.

-32-

The Copleys, like all other parents, are presumed to know the law. In re M.L.P., 281 S.W.3d 387, 392-93 (Tenn. 2009) (stating in a termination of parental rights proceeding that parents are presumed to know the law regarding their responsibility to visit their children). The Copleys chose to forego reliance upon the presumption of superior parental rights and voluntarily entered into the Agreed Order granting the Lovlaces grandparent visitation. While the Agreed Order lacks a specific finding of substantial risk of harm, the Agreed Order expressly granted the Lovlaces visitation *pursuant to the Grandparent Visitation Statute*. Implicit therein was the Copleys' acknowledgment that the prerequisites of the Grandparent Visitation Statute had been satisfied, including the prerequisite of a showing of substantial risk of harm to the child in the absence of visitation. The Copleys were afforded their opportunity to rely upon the presumption of superior parental rights in the initial proceeding and waived those rights when they voluntarily entered the Agreed Order. The record does not establish any other extraordinary circumstance that would justify applying the presumption of superior parental rights in this modification proceeding. See Blair, 77 S.W.3d at 148 (stating that a facially invalid order or an order procured by fraud or through procedural illegality may justify applying the presumption of superior parental rights in modification proceedings). Thus, the Copleys are not entitled to the presumption of superior parental rights in this proceeding. They are, however, entitled to a review of the facts under the correct standard: proof of a material change in circumstances and that any modification or termination would be in the best interests of the child.

We need not remand this matter to the trial court for application of our holding. The record indicates that this matter was litigated using the same burdens of proof and standards which we now articulate, and the trial court endeavored to apply these burdens and standards. Given the length of time this litigation has been pending and the sufficiency of the record, including the trial court's factual findings on the relevant issues, the best interests of the parties and the minor child, as well as the interests of judicial economy, are better served by this Court applying our holding, rather than remanding to the trial court for further proceedings.

Both parties asserted in the trial court and in the Court of Appeals, and they continue to assert in this Court, that material changes in circumstances have occurred which warrant modification or termination of grandparent visitation. The trial court found a material change in circumstances, and the evidence in the record does not preponderate against this finding. In particular, the evidence in the record supports the trial court's finding that the parties' relationship degenerated subsequent to entry of the Agreed Order to the point that the parties were no longer able to work together. Acrimony and hostility between the parties does not, in and of itself, amount to a material change in circumstances sufficient to permit modification or termination of visitation. See Rennels, 257 P.3d at 402 ("[T]he existence of some hostility between the parent and nonparent is insufficient because obviously some animosity exists

between a nonparent and a parent when one party must resort to litigation to settle visitation issues. . . . Such acrimony between a parent and a nonparent, by itself, is insufficient to demonstrate changed circumstances."). On the other hand, evidence that the parties' relationship has degenerated to the point that an existing visitation arrangement has proven unworkable in a significant way is sufficient to establish a material change in circumstances. Boyer v. Heimerman, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007); Rushing v. Rushing, No. W2003-01413-COA-R3-CV, 2004 WL 2439309, at *6 (Tenn. Ct. App. Oct. 27, 2004). The failure to adhere to a court-ordered visitation schedule also may constitute a material change in circumstances. See Ateca v. Ateca, No. M2007-02843-COA-R3-CV, 2009 WL 1138129, at *2 (Tenn. Ct. App. Apr. 27, 2009); see also Pace v. Pace, No. M2009-01037-COA-R3-CV, 2010 WL 1687740, at *5 (Tenn. Ct. App. Apr. 26, 2010) (holding that while "failure to adhere to a parenting plan or order of custody may constitute a material change in circumstances, deviation from the court order does not, *ipso facto*, support a finding of a material change in circumstance").

In this case, the record establishes that the parties' relationship degenerated following entry of the Agreed Order to the point that the visitation schedule became unworkable in a significant way. The parties' refusal to communicate and to cooperate with each other resulted in confusion and noncompliance with the specific terms of the Agreed Order. The evidence in the record therefore does not preponderate against the trial court's finding of a material change in circumstances.[16]

Despite the showing of a material change in circumstances, the evidence does not preponderate against the trial court's findings that neither the Lovlaces' requested increase in visitation[17] nor the Copleys' requested termination of visitation was in the minor child's

_____

[16] We find that the degeneration in the parties' relationship could not have been reasonably anticipated at the time the parties joined in an Agreed Order granting grandparent visitation; thus, we do not address Judge Kirby's conclusion that a parent seeking modification need not show that a material change in circumstances was unanticipated. Lovlace, 2012 WL 368221, at *24 (Kirby, J., concurring in part and dissenting in part). We note, however, that another pending appeal squarely presents the question of whether a parent seeking modification of a parenting plan must prove that the alleged material change in circumstances was unanticipated. Armbrister v. Armbrister, No. E2012-00018-COA-R3-CV, 2012 WL 3060509, at *4 (Tenn. Ct. App. July 27, 2012) ("We conclude the father failed to prove a significant or material unanticipated change of circumstances which affected the children's well-being in any meaningful way."), perm. app. granted (Tenn. Oct. 16, 2012).

[17] Although the Lovlaces requested in the conclusion of their reply brief that this Court grant them expanded visitation, they failed to provide any argument or citation to the record regarding this issue in the argument section of their brief. The issue is therefore waived. See Tenn. R. App. P. 11, 27(a)(7); Hodge, 382 S.W.3d at 335; see also Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 615 (Tenn. 2010) ("It (continued...)

-34-

best interests. Rather, the record supports the trial court's finding that the best interests of the child are served by making only minor modifications of the visitation schedule, including the elimination of some of the discretion afforded the Copleys by the Agreed Order. These minor modifications were narrowly tailored to address the material change in circumstances that had occurred. Moreover, these minor revisions do not alter significantly the amount of grandparent visitation granted by the Agreed Order.[18] The modifications also serve to promote the parties' adherence to the visitation schedule and to foster the minor child's best interests by reducing, if not eliminating, the reasons for the parties' disagreements and non-compliance, thus providing increased stability for the minor child. Accordingly, we reverse the Court of Appeals' judgment and reinstate that portion of the trial court's January 5, 2011 Order modifying the terms of the Lovlaces' visitation with the minor child.

### III. Contempt

The Lovlaces alleged approximately twenty-six instances of contempt against Mrs. Copley, and the trial court concluded that five of these allegations amounted to contempt. The Copleys mount two challenges to the contempt findings.

### A. Presumption of Superior Parental Rights

The Copleys' initial challenge is a legal one. Relying upon Judge Kirby's concurring and dissenting opinion, the Copleys assert that the trial court abused its discretion by not applying to the contempt proceedings the rebuttable presumption that parental decisions are in the best interests of a child. See Lovlace, 2012 WL 368221, at *26 (Kirby, J., concurring in part and dissenting in part). We reject this contention for the reasons we refused to apply the presumption of superior parental rights to the modification proceeding. Having once afforded the Copleys the opportunity to rely upon the presumption of superior rights to the care, custody, and control of their child in the initial grandparent visitation proceeding, no constitutional principle demands that they be afforded the presumption in a subsequent contempt proceeding alleging a willful violation of the prior, valid Agreed Order granting grandparent visitation.

---

[17](...continued)
is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contentions or merely constructs a skeletal argument, the issue is waived.").

[18] Based upon a comparison of the May 15, 2006 Agreed Order and the January 5, 2011 Order, it appears that the trial court increased the Lovlaces' visitation by a total of approximately twenty-nine hours per year.

## B. Lack of Factual Findings

The Copleys' second attack is upon the factual findings on which the trial court based the contempt findings.[19]  Specifically, the Copleys contend that the evidence preponderates against the trial court's findings that: (1) Mrs. Copley violated the Agreed Order; and (2) that any violation was willful.  The Lovlaces contend that the evidence supports the trial court's contempt findings and actually preponderates in favor of finding against Mrs. Copley on the other twenty-one contempt allegations in their Second Amended Petition.

Civil contempt claims based upon alleged willful disobedience of a court order[20] have four essential elements: (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful."  Konvalinka, 249 S.W.3d at 354-55.  Whether a party violated an order and whether a violation was willful are factual issues, which appellate courts review de novo, with a presumption of correctness afforded the trial court's findings.  Id. at 356-57.  We conclude that, in this case, the trial court failed to make sufficiently specific findings on the disputed facts necessary to find civil contempt.

Effective July 1, 2009, Tennessee Rule of Civil Procedure 52.01 was amended to require trial courts to make specific findings of facts and conclusions of law in all bench trials:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment . . . .  If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.  Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

---

[19] Once again, this issue is not listed in the appropriate section of the Copleys' brief, but because the Copleys' assertion, if correct, also would dispose of the remaining issue regarding the award of attorney's fees, we address the issue.

[20] Tenn. Code Ann. § 29-9-102(3) (2012) ("The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases: . . . [t]he willful disobedience or resistance of any . . . person, to any lawful writ, process, order, rule, decree, or command of such courts . . . .").

Tenn. R. Civ. P. 52.01.[21]  Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes.  9C Charles A. Wright et al., Federal Practice and Procedure § 2571, at 219-223 (3d ed. 2005) [hereinafter 9C Federal Practice and Procedure].  First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision.  See Estate of Bucy v. McElroy, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3-4 (Tenn. Ct. App. Apr. 26, 2013) (noting that the Rule 52.01 requirement facilitates appellate review); Hardin v. Hardin, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (same); In re K.H., No. W2008-01144-COA-R3-CV, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision); In re M.E.W., No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004) (same); 9C Federal Practice and Procedure § 2571, at 219 (recognizing that specific findings by the trial court facilitate appellate review).  Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making."  9C Federal Practice and Procedure § 2571, at 221-22.  A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts."  Id. at 222.  Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal.  Hardin, 2012 WL 6727533, at *5.

In this case, the trial court declined to make specific findings of fact as to the contempt.[22]  Although the trial court's final order includes some findings regarding the five

---

[21] Before July 1, 2009, specific findings of fact and conclusions of law were not required except "upon request made by any party prior to the entry of judgment."  Tenn. R. Civ. P. 52.01 (amended 2008); see also Poole v. Union Planters Bank, N.A., 337 S.W.3d 771, 791 n.12 (Tenn. Ct. App. 2010) (noting the amendment).

[22] At the beginning of the September 28, 2010 hearing on attorney's fees, the trial court denied the request for specific findings of fact and conclusions of law made by counsel for the Lovlaces, stating:

> It's certainly not an unreasonable request, but to be blunt, the [c]ourt did the best it could on the day of trial in announcing its decision.  To go back at this time and try to recreate basically the [c]ourt's ruling and make specific findings, the [c]ourt is going to simply rely on the transcript of its findings, good or bad.  I don't think there's anything to gain by going back and trying to recreate that.  Again, it may be cleaner for the appeals process, and the [c]ourt accepts that this is probably going to be appealed, regardless; but with that being said, obviously my court is not here to try to make it easier and make the rulings more clear for the Court of Appeals.  Truly, I think my job here is just simply to do the best I can in

(continued...)

allegations held to constitute contempt, the order does not include sufficiently specific findings on the disputed facts that were crucial to determining the elements of civil contempt. See Konvalinka, 249 S.W.3d at 354-55. There is no bright-line test by which to assess the sufficiency of factual findings, but "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue."  9C Federal Practice and Procedure § 2579, at 328. Courts need not make findings on stipulated or undisputed facts, unless conflicting inferences can be drawn from undisputed facts. Id. at 332-33.

This is not a case involving undisputed or stipulated facts.  The parties here  disputed whether Mrs. Copley's conduct amounted to a violation of the Agreed Order and disagreed as to whether any violation was willful.  Disputes about these issues existed as to each of the five contempt findings.[23]  In this bitterly fought case, involving many factual disputes, it is difficult to overstate the importance of findings of fact and conclusions of law.  The trial court's findings were not sufficiently specific to resolve these disputes.

One remedy appellate courts typically apply when a trial court's factual findings fail to satisfy the Rule 52.01 requirement is to remand the case to the trial court with directions to issue sufficient findings and conclusions.  See, e.g., Pandey v. Shrivastava, No.W2012-00059-COA-R3-CV, 2013 WL 657799, at *5-6 (Tenn. Ct. App. Feb. 22, 2013); Hardin, 2012 WL 6727533, at *5-6; In re Connor S.L., No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4-5, *7 (Tenn. Ct. App. Nov. 8, 2012); Simpson v. Fowler, No. W2011-02112-COA-R3-

---

(...continued)
deciding the case.  I think I've done that.  In some cases the [c]ourt obviously believes it needs to take the time to write out its order, conclusions of law and findings of fact; but in this case, the [c]ourt thinks it made specific-enough finding[s] on the day of, and I think we're ready to go forward with the hearing.

[23] The trial court based its findings of contempt on five specific incidents: January 2007, February 17, 2007, June 2007, and two incidents in July 2007.  The trial court failed to make specific findings resolving the disputed facts concerning each of these incidents, including the disputes about whether any noncompliance with the Agreed Order was willful.  The trial court's finding regarding the June 2007 contempt states that the Lovlaces' "visitation was missed without cause."  However, the Lovlaces alleged a scheduling conflict, not missed visitation, in June 2007.  Although the Lovlaces' Second Amended Petition for Contempt erroneously identified June 23, 2007, as a date when they missed Saturday visitation, the parties later entered an agreed order correcting the Petition to reflect June 23, 2008, as the date of the alleged missed Saturday visitation.  The Lovlaces' proof at trial also clearly identified June 23, 2008, not June 2007, as the date of the missed Saturday visitation.  Thus, the trial court's finding regarding the June 2007 contempt is inconsistent with the allegations and proof in the record.

CV, 2012 WL 3675321, *4-5 (Tenn. Ct. App. Aug. 28, 2012). Alternatively, an appellate court may choose to remedy the trial court's deficient factual findings by conducting a de novo review of the record to determine where the preponderance of the evidence lies. See, e.g., Ward v. Ward, No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *15 (Tenn. Ct. App. June 20, 2013); see also Kendrick v. Shoemake, 90 S.W.3d 566, 570 (Tenn. 2002) (applying de novo review when the trial court's factual findings were insufficient); Brooks v. Brooks, 992 S.W.2d 403, 405 (Tenn. 1999) (same).

Neither of these typical remedies is workable in this case. Remanding to the trial court for sufficiently specific findings would only further prolong this already protracted, contentious, and expensive litigation, and potentially result in a second appeal. A remand would undermine the goals, expressed in the Tennessee Rules of Appellate Procedure, of securing "the just, speedy, and inexpensive determination of every proceeding on the merits" and of avoiding needless litigation. Tenn. R. App. P. 1, 13. A remand for additional proceedings would serve neither the interests of justice nor the interests of the parties. Cf. S. Abraham & Sons, Inc. v. Dep't of Treasury, 677 N.W.2d 31, 43 n.11 (Mich. Ct. App. 2003) (concluding that the trial court's contempt findings were inadequate but refusing to remand "because numerous procedural defects tainted the contempt 'hearing'").

Conducting a de novo review of the record on appeal to determine where the preponderance of the evidence lies also is not feasible. This is true because appellate courts are ill-equipped to make the type of credibility determinations that would be necessary to resolve the factual disputes surrounding each of the five contempt findings.[24]

The typical remedies of a remand and de novo review are not the only options available to this Court. Tennessee Rule of Appellate Procedure 36(a) authorizes appellate courts to grant "the relief on the law and facts to which the party is entitled or *the proceeding otherwise requires*." Tenn. R. App. P. 36(a) (emphasis added). "This subdivision makes clear that the appellate courts are empowered to grant whatever relief an appellate proceeding requires." Tenn. R. App. P. 36(a) advisory commission cmt. This Court has not often relied upon Rule

---

[24] For this reason, we also decline to address the Lovlaces' request to review the record, make additional findings of contempt, and order make-up visitation. Additionally, even if resolving this request would not require credibility determinations, we would decline to address it. The Lovlaces failed to raise these issues in their Tennessee Rule of Appellate Procedure 11 application for permission to appeal, failed to list these issues in the appropriate section of their supplemental brief, and failed to provide any significant argument regarding these issues in the argument section of their briefs in this Court. The issues are therefore waived. See Tenn. R. App. P. 11, 27(a)(4), (a)(7); Hodge, 382 S.W.3d at 335; see also Sneed, 301 S.W.3d at 615.

36(a) as a basis for granting appropriate relief.[25] Based on its unique facts and procedural posture, we have determined that this is an appropriate case for the exercise of this discretion. We therefore invoke Rule 36(a) and provide the relief on the law and the facts that this proceeding requires. We vacate the trial court's judgment finding Mrs. Copley in contempt and dismiss the Lovlaces' allegations of contempt. This relief not only corrects the judicial error that precluded effective appellate review but also provides closure and finality to the Lovlaces, the Copleys, and the minor child—very important considerations in legal proceedings involving children. Accordingly, we vacate the portion of the trial court's judgment finding Mrs. Copley in contempt and dismiss the Lovlaces' allegations of contempt. As a result, we also vacate that part of the trial court's judgment ordering Mrs. Copley to pay a portion of the Lovlaces' attorney's fees.[26]

Our decision to grant this relief should in no way be understood as condoning the acrimonious and uncooperative relationship that has existed between the Copleys and the Lovlaces or suggesting that their future willful failure to abide by the visitation arrangement in the January 5, 2011 order will not result in serious consequences. Their hostility towards each other and unwillingness to work together has resulted in each side incurring thousands of dollars of attorney's fees, in addition to the emotional turmoil this litigation has undoubtedly produced. Unfortunately, the record on appeal suggests that the Copleys and the Lovlaces have lost sight of the fact that the paramount consideration in this case, as well as all other legal proceedings involving child custody and visitation, is the welfare of the child. Luke v. Luke, 651 S.W.2d 219, 221 (Tenn. 1983). The interests and desires of adult parties are secondary to this paramount concern. Boyer, 238 S.W.3d at 255; Dantzler v. Dantzler, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). We urge the Copleys and the Lovlaces to

---

[25] See, e.g., State v. Walton, 41 S.W.3d 75, 96 (Tenn. 2001) (holding that the defendant's statements to the police were not admissible against him and relying on Rule 36(a) to remand to the trial court to allow the defendant an opportunity to withdraw his guilty plea, which was entered when he mistakenly believed that the statements were admissible evidence against him); Norton v. Everhart, 895 S.W.2d 317, 322 (Tenn. 1995) (relying on Rule 36(a) to allow the pro se litigant to file a petition in the appropriate court because the trial court where the petition was filed failed to transfer the pro se petition to the appropriate court).

[26] Because we have vacated the trial court's judgment, we need not address the Court of Appeals' conclusions regarding the inadequacy of the findings to support the attorney's fees award. For the same reason, we need not address Mrs. Copley's argument that the trial court lacked authority to award attorney's fees as a sanction for civil contempt. We note, however, that this Court has previously discussed the circumstances under which monetary damages may be awarded as a sanction for civil contempt. See Overnite Transp. Co. v. Teamsters Local Union No. 480, 172 S.W.3d 507, 510-11 (Tenn. 2005) (stating that damages are available to a party injured by a contemnor's acts in violation of a court's order and describing the measure of damages as "the actual injury sustained as a result of the contempt," id. at 511 (citations omitted)); see also Tenn. Code Ann. §§ 29-9-104, -105 (2012) (describing the availability of "damages" in contempt proceedings).

refocus on how best to foster the welfare of the child they all dearly love and allow this goal to guide their future interactions with each other.

## Conclusion

Based upon our review of the record and the applicable legal principles, we conclude that the Court of Appeals erred by vacating the trial court's judgment regarding visitation. We therefore reverse the Court of Appeals' judgment and reinstate the trial court's judgment regarding grandparent visitation. We also reverse the Court of Appeals' judgment affirming the trial court's contempt findings and remanding for re-consideration of the attorney's fees award. We vacate those portions of the trial court's judgment finding Mrs. Copley in contempt and ordering her to pay $32,000 of the Lovlaces' attorney's fees. We also dismiss the Lovlaces' contempt allegations. Costs of this appeal are assessed one-half to Clayton O'Neal Lovlace and Jean Lovlace, and their surety, and one-half to Timothy Kevin Copley and Beth Copley, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE