FILED
10/16/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 21, 2020 Session

## IN RE M.L.S.

**Appeal from the Chancery Court for Hawkins County**
**No. 2018-CH-233   Douglas T. Jenkins, Chancellor**

_____

**No. E2019-01794-COA-R9-CV**

_____

This appeal involves a petition to enforce a visitation order after the entry of a final decree of adoption. The adoptive parents filed a motion to dismiss, which the trial court granted in part and denied in part. The trial court ordered the parties to participate in depositions to address the issue of "acquiescence" and determine "if an enforceable right of visitation with the minor Child was acquired by the Petitioners being allowed to visit after the adoption of the minor Child was finalized." The adoptive parents sought and were granted permission to file an interlocutory appeal, challenging the denial in part of their motion to dismiss. We reverse and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Phillip L. Boyd, Rogersville, Tennessee, for the appellants, Renee G. and Danny G.

Rachel Ratliff, Johnson City, Tennessee, for the appellees, Penny T. and Jerry T.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

The child at issue in this proceeding, M.L.S.,[1] was born in 2013. Her biological parents died in 2014. Although the record before us is sparse, it reflects that the Tennessee Department of Children's Services became involved and filed some sort of petition with

---

[1] We refer to the minor child and other parties by initials to protect the child's privacy.

regard to the child in the juvenile court of Hawkins County. After a hearing, the juvenile court entered an order awarding temporary legal custody of the child to her maternal grandmother and step-grandfather ("Grandparents"). According to the order, "[DCS] reported that [Grandparents] were appropriate caregivers for the minor child and that [DCS] would be releasing custody of the minor child to [Grandparents]." The child's paternal great-aunt and great-uncle ("Aunt and Uncle") also appeared at the hearing. According to the order, "[DCS] reported that the parties had worked out a visitation schedule prior to the hearing and that [Aunt and Uncle] would be entitled to a minimum of every other weekend visitation with the minor child." The court went on to find that Grandparents were "appropriate custodians of the minor child." The order states that the trial judge "advised all parties to work together to help raise [the child.]" In conclusion, the order stated that the child was "placed in the temporary legal custody of [Grandparents] with authority to consent to any ordinary or necessary medical, surgical, hospital, educational, institutional, psychiatric, or psychological care." The order states that the matter was "hereby closed" and that no further hearings were scheduled.

On May 18, 2015, the chancery court for Hawkins County entered a final decree of adoption permitting Grandparents to adopt the child. The decree recites that the child's parents were deceased, that Grandparents had "actual physical and legal care of the child," and that they had been awarded custody pursuant to the order of the juvenile court in the aforementioned matter. The order also states that all parties entitled to notice were served and that all necessary parties were before the court. The adoption decree provided that "the relationship of parent and child is hereby established with all rights and privileges incident thereto," and it stated that Grandparents, as adoptive parents, would "have exclusive care, custody and control of the said child, free from the claims or hindrances of all others[.]"

On September 26, 2018, Aunt and Uncle filed a "Petition to Enforce Visitation" in chancery court. The petition stated that Aunt and Uncle had been awarded every other weekend visitation by the juvenile court in 2014 pursuant to the same order that granted temporary legal custody to Grandparents. The petition stated that Aunt and Uncle believed that Grandparents had adopted the child sometime in 2015. However, Aunt and Uncle stated that they had continued to have regular visitation with the child until June 2018 when Grandparents "abruptly ended" their visitation. Aunt and Uncle alleged that a significant bond existed between them and the minor child and that severance of the relationship would cause emotional harm to the child. They also asserted that it was in the best interest of the child for them to continue having a relationship with her. Thus, Aunt and Uncle asked the court to "enter an Order to Enforce the Visitation previously Ordered between the Plaintiffs and the minor Child." They attached to the petition a copy of the 2014 juvenile court order.

Grandparents filed a motion to dismiss the petition to enforce visitation, asserting that it failed to state a claim. Grandparents confirmed that they had in fact adopted M.L.S. in 2015. They attached the adoption order to their motion. Thus, Grandparents pointed

out that they had become the child's adoptive parents. Grandparents argued that "any prior Order granting temporary visitation is moot and not enforceable." They further argued that Aunt and Uncle had no standing to seek visitation with their adopted child.

While this case was pending, Aunt and Uncle filed a separate petition to set aside the adoption order, also in chancery court. On February 20, 2019, the trial court held a hearing to jointly address both matters. At the conclusion of the hearing, the trial judge announced that the separate petition to set aside the adoption order was dismissed.[2] Regarding the petition to enforce visitation, the trial judge announced that he intended to take the matter under advisement in order to research whether the visitation order "survive[d] the adoption."

On May 9, 2019, the trial court entered an order on Grandparents' motion to dismiss the petition to enforce visitation. The trial court partially granted the motion to dismiss, "pursuant to T.C.A. § 36-1-121(f)." At the time of the adoption proceeding, that subsection provided:

> (f) The adoptive parents of a child shall not be required by any order of the adoption court to permit visitation by any other person, nor shall the order of the adoption court place any conditions on the adoption of the child by the adoptive parents. Any provision in an order of the court or in any written agreement or contract between the parent or guardian of the child and the adoptive parents requiring visitation or otherwise placing any conditions on the adoption shall be void and of no effect whatsoever; provided, that nothing under this part shall be construed to prohibit "open adoptions" where the adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child; and provided further, that the permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons.

Tenn. Code Ann. § 36-1-121(f) (2015). Citing this section, the trial court "partially dismissed" the petition to enforce visitation. Although the trial court's order did not elaborate further on its reasoning, we interpret the order as holding that the juvenile court's order did not survive the adoption proceeding.

However, the trial court excluded one issue from its dismissal and ruled that the parties must participate in depositions regarding whether "acquiescence" occurred.

---

[2] In a related appeal, *In re Adoption of M.L.S.*, No. E2019-01918-COA-R3-CV, this Court affirmed the trial court's dismissal of the petition to set aside the adoption.

Specifically, the trial court ordered depositions to determine when visitation began and ended "and if an enforceable right of visitation with the minor Child was acquired by [Aunt and Uncle] being allowed to visit after the adoption of the minor Child was finalized." The order stated that an additional hearing would be conducted after the completion of depositions on this remaining issue of "acquired visitation rights through visitation after the adoption of the minor Child."

Grandparents filed a motion asking the trial court to amend its order regarding depositions and grant their motion to dismiss in its entirety. They pointed to the final sentence of Tennessee Code Annotated section 36-1-121(f), which provided that adoptive parents' "permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons." Due to this language, Grandparents insisted that Aunt and Uncle had not acquired any enforceable right to visitation.

Aunt and Uncle filed a response, asserting that they could potentially have acquired an enforceable right to visitation due to acquiescence and the unique facts of this case. After an additional hearing, the trial court declined to alter its original ruling but indicated that it would be inclined to grant Grandparents permission to seek an interlocutory appeal should they choose to pursue one. The order further stated that Aunt and Uncle would also be given the opportunity to pursue an interlocutory appeal if they chose to pursue one.

Thereafter, Grandparents filed a written motion for permission to seek an interlocutory appeal to this Court regarding the partial denial of their motion to dismiss. Grandparents maintained that Tennessee Code Annotated section 36-1-121(f) barred Aunt and Uncle from claiming any enforceable right to visitation on the basis of acquiescence. The trial court entered an order granting Grandparents permission to seek an interlocutory appeal in this Court. Upon consideration of the application for permission to appeal Grandparents filed before this Court, we entered an order granting interlocutory review of the trial court's order.

## II.  ISSUES PRESENTED

This Court's order granting review framed the following issues to be reviewed on appeal:

(1) Whether [Aunt and Uncle] have standing to proceed with a suit to enforce visitation with the subject minor child under the version of Tennessee Code Annotated § 36-1-121 in effect at the time of entry of the Final Decree of Adoption.
(2) Whether [Aunt and Uncle] have standing to proceed with a suit to enforce visitation with the subject minor child based upon other grounds.

- 4 -

However, these issues must be read in light of the procedural posture of this case. In their brief on appeal, Aunt and Uncle raise a host of arguments regarding a wide range of issues. For instance, in apparent relation to their separate petition to set aside the adoption, they argue that they were guardians of the child and "had a legal interest in the child that would have had to be terminated in order to complete the adoption." They also argue that the juvenile court's order awarding them visitation rights should be construed as a "grandparent visitation" order that would survive the adoption. However, we must bear in mind that this is a Rule 9 appeal in which the only parties who filed an application for permission to appeal were Grandparents. The limited ruling challenged by Grandparents was the *partial denial* of their motion to dismiss based on the issue of acquiescence. Therefore, the limited issue properly before us in this interlocutory appeal is whether the trial court erred in partially denying Grandparents' motion to dismiss on the basis that Aunt and Uncle may have acquired some enforceable visitation right by acquiescence.

### III. DISCUSSION

"Tennessee law recognizes no legal distinction between a biological parent and an adoptive parent." *Brown v. Farley*, No. E2018-01144-COA-R3-CV, 2019 WL 993122, at *4 n.2 (Tenn. Ct. App. Feb. 28, 2019).

> The signing of a final order of adoption . . . establishes from that date the relationship of parent and child between the adoptive parent or parents and the adopted child as if the adopted child had been born to the adoptive parent or parents and the adopted child shall be deemed the lawful child of such parent or parents, the same as if the child had been born to the parent or parents, for all legal consequences and incidents of the biological relation of parents and children.

Tenn. Code Ann. § 36-1-121(a). "Thus, the adoptive parents acquire all parental rights and responsibilities[.]" *In re Montana R.T.*, No. E2011-00755-COA-R3-PT, 2012 WL 2499498, at *5 (Tenn. Ct. App. June 29, 2012).

At the time of the adoption in this case, and through the date of the hearing on Grandparents' motion to dismiss, the statute further provided:

> (f) The adoptive parents of a child shall not be required by any order of the adoption court to permit visitation by any other person, nor shall the order of the adoption court place any conditions on the adoption of the child by the adoptive parents. Any provision in an order of the court or in any written agreement or contract between the parent or guardian of the child and the adoptive parents requiring visitation or otherwise placing any conditions on the adoption shall be void and of no effect whatsoever; provided, that nothing under this part shall be construed to prohibit "open adoptions" where the

adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child; and provided further, that *the permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons.*

Tenn. Code Ann. § 36-1-121 (2015) (emphasis added).

Grandparents relied on the italicized portion of the statute in support of their position that Aunt and Uncle could not acquire any enforceable right to visitation through "acquiescence." The trial court rejected their argument and ordered the parties to conduct discovery to determine "if an enforceable right of visitation with the minor Child was acquired by the Petitioners being allowed to visit after the adoption of the minor Child was finalized." We respectfully disagree with the trial judge's conclusion that Aunt and Uncle could potentially acquire an enforceable visitation right by "being allowed to visit after the adoption." At the time of the adoption decree, throughout the subsequent period of visitation, and at the time of the hearing below, Tennessee Code Annotated section 36-1-121(f) (2015) provided that the adoptive parents' permission or agreement to permit visitation would not in any manner whatsoever establish enforceable rights in the related person permitted to visit. *See, e.g.*, *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *14 (Tenn. Ct. App. Apr. 21, 2004) (recognizing that a biological mother "would have no enforceable right" to visitation after adoption "if the adoptive parents changed their minds").

We recognize that on March 22, 2019, after the hearing was conducted in the trial court below, Tennessee Code Annotated section 36-1-121(f) was amended to provide:

(f) A final order of adoption of a child cannot require the adoptive parent to permit visitation by any other person, nor can the final order of adoption place any conditions on the adoption of the child by the adoptive parent. This statute does not prohibit the entry of an order enforcing or modifying a contract for post-adoption contact pursuant to § 36-1-145.

Tenn. Code Ann. § 36-1-121 (2019). However, this amendment does not alter our conclusion in this case. Although the specific italicized language above no longer appears in the current version of the statute as amended, the result is the same under the facts of this case. The parent-child relationship was established between Grandparents and the child in 2015, "the same as if the child had been born to the parent or parents, for all legal consequences and incidents of the biological relation of parents and children." Tenn. Code Ann. § 36-1-121(a). Although we recognize that Aunt and Uncle want to have a

relationship with the child, we are not aware of any legal basis for them to have possibly acquired enforceable visitation rights based on "acquiescence" in visitation after the adoption.[3]

## IV. CONCLUSION

For the aforementioned reasons, the trial court's partial denial of the motion to dismiss is hereby reversed, and we remand for dismissal of the petition to enforce visitation in its entirety. Costs of this appeal are taxed to the appellees, Penny T. and Jerry T., for which execution may issue if necessary.

_____
CARMA DENNIS McGEE, JUDGE

---

[3] As previously noted, Aunt and Uncle argued on appeal that the juvenile court's 2014 order granting them every other weekend visitation "should be considered to fall under a grant of visitation pursuant to the grandparent visitation statute." Aunt and Uncle do not appear to argue that the "acquiescence" issue that remained pending in the trial court had anything to do with the grandparent visitation statute. However, to the extent that their argument could be construed in that manner, we reject the suggestion that they could have acquired any enforceable grandparent visitation rights. Aunt and Uncle claim to fall within the definition of a "grandparent" pursuant to the grandparent visitation statute because they "act more so in a grandparent role to the child than their actual biological role of great-uncle and - aunt."

"The Grandparent Visitation Statute applies only to persons who satisfy the statutory definition of the term 'grandparent.'" *Lovlace v. Copley*, 418 S.W.3d 1, 17 (Tenn. 2013). The statute provides that "the word 'grandparent' includes, but is not limited to: (1) A biological grandparent; (2) The spouse of a biological grandparent; (3) A parent of an adoptive parent; or (4) A biological or adoptive great-grandparent or the spouse thereof." Tenn. Code Ann. § 36-6-306(e). In *Lovlace*, the Tennessee Supreme Court held that this definition was expansive enough to include a biological father's adoptive parent and step-parent. 418 S.W.3d at 18. However, the Court noted, "In reaching this holding, we have not considered the extent or quality of the Lovlaces' relationship with the minor child, as this is not a relevant consideration in determining whether a petitioner satisfies the statutory definition of 'grandparent.'" *Id.* at 19 n.7. Thus, we reject the contention that Aunt and Uncle should be considered grandparents within the meaning of the statute on the basis that they act "in a grandparent role to the child." *See In re Claire C.*, No. M2019-00986-COA-R3-JV, 2020 WL 755174, at *7 (Tenn. Ct. App. Feb. 14, 2020) *perm. app. denied* (Tenn. June 3, 2020) (concluding that a great uncle and great aunt did not meet the definition of a grandparent in the grandparent visitation statute and explaining that "the statute does not authorize a court to determine that a petitioner qualifies as a 'de facto grandparent' based upon his or her relationship with a child"); *In re Dayton R.*, No. W2014-01904-COA-R3-JV, 2015 WL 1828039, at *4 (Tenn. Ct. App. Apr. 21, 2015) ("[T]he Legislature's wording in Section 36-6-306(e)(1) indicates an intent to provide standing to lineal ancestors, or grandparents who are biologically related to the child.")