IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2021 Session

**MICHAEL ASHLEY LOCKHART v. CASEY DAWN HIGGINS**

**Appeal from the Circuit Court for Warren County**
**No. 950      Larry B. Stanley, Jr., Judge**



**No. M2020-01370-COA-R3-CV**

A father filed a petition to change the surname of his nonmarital child. After the trial court granted the father's petition, the mother appealed. Finding that the father failed to meet his burden of establishing that a surname change was in the child's best interest, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Michael E. Giffin, Tullahoma, Tennessee, for the appellant, Casey Dawn Higgins.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Michael Ashley Lockhart.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Michael Ashley Lockhart ("Father") and Casey Dawn Higgins ("Mother"), who were never married to each other, are the parents of a child born in 2018. Approximately two weeks after the child's birth, Father filed a petition to establish paternity. In his petition, Father also requested that the trial court change the child's surname to his surname.

The parties attended mediation and were able to reach an agreement about parentage, visitation, and child support. They were unable to reach an agreement about whether the child's surname should be changed, however, and the trial court held a hearing on this issue on August 11, 2020. After hearing all the proof, the trial court entered an order establishing parentage and adopting the parties' agreed permanent parenting plan. In

the order, the court also ordered that the child's surname be changed to a hyphenated version of both parents' surnames.

Mother appealed and presents one issue for our review: whether the trial court erred in concluding that changing the child's surname was in the best interest of the child.

STANDARD OF REVIEW

In the present case, the trial court failed to specifically identify any facts upon which it relied in making its determination that changing the child's surname was in the child's best interest. Tennessee Rule of Civil Procedure 52.01 provides that, in non-jury trials, the trial court "shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." When a trial court makes factual findings, we review those factual findings de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Millmeyer v. Whitten*, No. W2019-00586-COA-R3-JV, 2019 WL 5837687, at *1 (Tenn. Ct. App. Nov. 7, 2019). If a trial court fails to make specific findings of fact, as was the case here, "no presumption of correctness arises because 'there was nothing found as a fact which we may presume correct.'" *Colvard v. Colvard*, No. E2020-01066-COA-R3-CV, 2021 WL 2769183, at *5 (Tenn. Ct. App. July 1, 2021) (quoting *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999)). An appellate court has the following options when a trial court fails to make specific factual findings: it may "remand the case to the trial court with direction to issue sufficient findings and conclusions," or it "may choose to remedy the trial court's deficient factual findings by conducting a de novo review of the record to determine where the preponderance of the evidence lies." *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013).

Here, remanding the case to the trial court for sufficient findings of fact would not serve either the interest of justice or the interests of the parties. Rather, it would prolong this case with expensive and needless litigation. One goal of the Tennessee Rules of Appellate Procedure is "to secure the just, speedy, and inexpensive determination of every proceeding on its merits." TENN. R. APP. P. 1, 13. We, therefore, choose to proceed "by conducting a de novo review of the record to determine where the preponderance of the evidence lies." *Lovlace*, 418 S.W.3d at 36.

ANALYSIS

The legislature has established the policy of this state is that, "[i]f the mother was not married at the time of either conception or birth or between conception and birth, . . . the surname of the child shall be . . . [t]he surname of the mother." Tenn. Code Ann. § 68-3-305(b)(1)(A); *see also Millmeyer*, 2019 WL 5837687, at *1. Subsequent legitimation or paternity proceedings do not result in a nonmarital child's surname being changed unless a court orders that the surname be changed. *Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993); *see also* Tenn. Code Ann. § 68-3-305(c) ("In any case in which

paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court."). When determining whether a nonmarital child's surname should be changed, courts consider the following factors:

> The courts should not change a child's surname unless the change promotes the child's best interests. Among the criteria for determining whether changing a child's surname will be in the child's best interests are: (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent[,] (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname.

*Id.* (citations omitted).

Any person, including a recognized biological father, seeking to change a nonmarital child's surname bears the burden of proving "that changing the child's surname is in the child's best interest." *Brown v. Baird*, No. 01A01-9704-JV-00148, 1997 WL 638278, at *1 (Tenn. Ct. App. Oct. 17, 1997); *see also Millmeyer*, 2019 WL 5837687, at *2. "The amount of proof required to justify the change is 'not insubstantial.' Minor inconvenience or embarrassment is insufficient." *In re A.C.S.*, No. M2008-898-COA-R3-JV, 2009 WL 348510, at *3 (Tenn. Ct. App. Feb. 12, 2009) (citations omitted). Furthermore, "[a] parent's preference that a child's surname be changed is not sufficient to justify such relief, and such preference is not evidence that a name change is in the child's best interest." *Millmeyer*, 2019 WL 5837687, at *2 (citing *Whited v. Fleenor*, No. E2002-01185-COA-R3-JV, 2003 WL 1092968, at *2-3 (Tenn. Ct. App. Mar. 13, 2003)).

A thorough review of the record in this case shows that Father presented no evidence that changing the child's surname would benefit the child. Father stated only that the child's surname should be changed because he hoped to one day coach the child in various sporting events. Such general statements of opinion or belief are not sufficient to establish that changing a child's surname is in the child's best interest. *See Brown*, 1997 WL 638278, at *2. Rather, such statements merely focus on how changing the child's surname would be in the parent's best interests.

Applying the *Barabas* factors, the record contains no evidence regarding factor one—the child's preference. As for factor two—changing the child's surname would have an effect on the child's relationship with the parents—Father testified that his relationship with the child was "awesome," but he presented no evidence that changing the child's surname would make the child's relationship with either parent more or less "awesome."

Regarding factor three—the length of time the child had the original surname—the child was very young and not accustomed to using a particular surname.

Father primarily focused his proof on the last two *Barabas* factors. Regarding factor four—the degree of community respect associated with the current and proposed surnames—Father believed that his surname had a good reputation in the community because he co-owned a business that donated the use of boats and campgrounds for some community events and because he was involved with the McMinnville Jaycees from 2005 until 2012. This evidence was negated, however, by Father's more recent conduct. Father admitted that, since the child was born, he has been convicted of theft, criminal trespass, stalking, and violation of probation. He further admitted that his business partners accused him of stealing $2,000 from the business. Moreover, while the case was pending, Father tested positive for marijuana and was tagged in a social media post containing a reference to drug dealing. He acknowledged that Mother's surname, on the other hand, had no negative connotation in the community.[1]

Factor five considers whether the child will experience difficulty, harassment, or embarrassment from bearing either the original or proposed surname. Pursuant to the permanent parenting plan, the child primarily resides with Mother. Mother testified that her surname had no negative connotation and that, although she was engaged, she would retain her surname once married so that she and the child would still have the same surname. As Father's testimony demonstrated, changing the child's surname under these circumstances could cause the child difficulty:

> I know that me being a Lockhart, and my mother doesn't, well, share the same name. It was confusing for me growing up, and it was always, well, why don't you have the same last name as your mom. I got that question a whole lot.

Based on the foregoing facts, we conclude that Father failed to prove that changing the child's surname was in the child's best interest. We, therefore, reverse the trial court's order changing the child's surname.

---

[1] Approximately five years before the child's birth, Mother committed a documentation error while working as a nurse at Vanderbilt Hospital. As a result of this error, she was placed on probation at work for one year, but she was still permitted to work as a nurse. This incident occurred in a different community than the one in which the parties reside.

CONCLUSION

The judgment of the trial court is reversed, and costs of this appeal are assessed against the appellee, Michael Ashley Lockhart, for which execution may issue if necessary.


_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE