IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 10, 2020 Session

## RICKIE HEATHERLY v. OFF THE WAGON TOURS, LLC

**Appeal from the Chancery Court for Davidson County**
**No. 18-0327-II      Anne C. Martin, Chancellor**

_____

**No. M2019-01582-COA-R3-CV**
_____

Relying on an inapplicable statute, the plaintiff asked the court to order a limited liability company to produce records for his inspection. Claiming that the plaintiff had never been a member, the LLC denied that he was entitled to access its records. After a bench trial, the court found that the plaintiff was a member and entitled to inspect and copy the records. So the court ordered the LLC to allow the inspection and to pay the plaintiff's costs and attorney's fees incurred in filing suit. The evidence does not preponderate against the court's finding that the plaintiff was a member at formation of the LLC. But because the relief was sought under an inapplicable statute, we vacate the inspection order and the award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

W. Gary Blackburn and Bryant Kroll, Nashville, Tennessee, for the appellant, Off The Wagon Tours, LLC.

Mark T. Freeman and Marissa L. Knight, Nashville, Tennessee, for the appellee, Rickie Heatherly.

## OPINION

## I.

## A.

Claiming to be "part owner and member" of Off The Wagon Tours, LLC, Rickie Heatherly filed this action seeking to inspect and copy the LLC's records. According to his complaint, Mr. Heatherly made a written request to inspect and copy the LLC's records. Yet the LLC never made the documents available. So Mr. Heatherly asked the court to order the LLC to produce the records and to pay his costs and attorney's fees. The LLC responded that Mr. Heatherly "is not, and had never been, an owner or member of Off The Wagon Tours, LLC."

The dispute over Mr. Heatherly's membership status went to trial. The court heard testimony from Mr. Heatherly; Curtis Carney, the LLC's member-manager; Steven Reese, a potential investor; and Terry Evanstein, the owner of a competing business.

Mr. Heatherly claimed that he had been a member of the LLC from the beginning. In his words, "I already had five percent on day one." Mr. Carney maintained that he never became a member because he did not fulfill the condition precedent for membership— $10,000 in sweat equity.

Both sides agreed that the idea for the business originated with Mr. Heatherly. After watching one of the multiple "party vehicles" pass through downtown Nashville, Mr. Heatherly thought, why not do the same thing using a tractor and a custom-built wagon? While others scoffed, Mr. Carney "thought it was a great idea."

Mr. Carney paid Legal Zoom, an online legal services company, to form Off The Wagon Tours, LLC. Based on information from Mr. Carney, Legal Zoom drafted and filed Articles of Organization for the LLC with the Tennessee Secretary of State. The Articles, filed on February 24, 2016, specified that the LLC was manager-managed and had four members. Mr. Carney was listed as the manager. The four members were not specifically named in the Articles, but Mr. Carney later identified them as himself, Mr. Heatherly, Steven Reese, and Danny Cage.

At trial, Mr. Carney explained that he "jumped . . . way too soon" when he provided the four names to Legal Zoom. He had initially offered Mr. Heatherly a 3% membership interest in the LLC in exchange for using his idea. He had also offered membership to Mr. Reese and Mr. Cage in exchange for cash contributions. But Mr. Reese and Mr. Cage chose not to participate in the LLC.

2

After the two potential investors backed out, Mr. Carney offered Mr. Heatherly a new deal—a 5% membership interest. According to Mr. Heatherly, the 5% interest was for his idea and "helping [Mr. Carney] get this off the ground." Mr. Carney could not "do all the work by himself." And Mr. Carney explained, "I felt five was adequate, assuming that we worked together and if he fulfilled all the obligations of a teammate or an owner." Mr. Heatherly accepted the new offer.

Legal Zoom also drafted an operating agreement for the LLC. At Mr. Carney's request, the online company made multiple revisions to the operating agreement. Ultimately, Mr. Carney signed a version of the agreement that listed Mr. Carney and Mr. Heatherly as the only two members of the LLC. Although Mr. Carney repeatedly asked him to, Mr. Heatherly never signed the agreement. Mr. Heatherly claimed that, although he was willing to sign, the timing was never right.

Mr. Carney provided the startup funds for the LLC. And both men spent hours customizing a tractor and a wagon for the business. They added a bar, lights, and a stereo system. Mr. Carney purchased all the materials. Mr. Heatherly contributed his ideas and labor.

The two men had an initial business meeting during which they went over the LLC's finances. At Mr. Carney's request, Mr. Heatherly deposited approximately $1,400 in the LLC's business account to purchase insurance. Later, he also paid some membership fees for the LLC. He was never reimbursed.

Off The Wagon Tours opened for business on April 8, 2016. Mr. Heatherly drove the tractor while Mr. Carney handled the paperwork and the customers.

In August, Mr. Carney offered Mr. Heatherly an additional 5% interest if he contributed $10,000 in sweat equity. His contribution was to be measured by the LLC's gross profits, not hours worked. Mr. Carney wrote the proposal on a white board. A picture of the proposal was admitted as an exhibit at trial.

The LLC eventually purchased a second wagon that the two men customized. According to Mr. Heatherly, his membership interest grew another 5% with the addition of the second wagon.

But as the business grew, the relationship between the two men deteriorated. On November 18, 2016, Mr. Carney told Mr. Heatherly he was no longer needed. And he gave Mr. Heatherly two letters. The first letter provided,

> Please find attached the agreement we discussed regarding my offer to purchase your shares of Off The Wagon Tours LLC and legally establish the transition of our partner relationship.

3

My attorney and I believe it includes everything that we have previously discussed and is very generous.

Read the document carefully and we suggest you have your attorney review it as well. Following your review please sign and return the LLC buyout agreement as soon as possible. Thank you for your understanding in this difficult matter.

The buyout agreement was in the form of another letter. According to Mr. Carney, Mr. Heatherly had "failed to comply with the established rules and standards that we agreed upon." So his participation in the business was no longer needed. Mr. Carney offered Mr. Heatherly a specified sum to "assume [his] 10% interest in the company (even though [his] obligations ha[d] not been met)." The letter warned that acceptance of this offer "will mean that you will shall [sic] sign any and all appropriate paperwork to release your name and interest of [sic] Off The Wagon Tours LLC." Mr. Carney signed and dated the agreement.

Mr. Heatherly never worked for the LLC again. Nor did he sign the buyout agreement. And in May 2017, he demanded payment for both his membership interest and the work he performed for the LLC. In August, he requested access to the books and records of the LLC.

Terry Evanstein, the owner of a competing business, understood from conversations with both men that they were "partners of some kind." At trial, Mr. Carney agreed "absolutely we were partners." But, "[p]artner's a general term and I guess you could say friends, partners, whatever. He was there, he helped me out. I mean, don't get me wrong, it was his idea. But it just didn't work out."

The documents on file with the Tennessee Secretary of State continued to reflect Mr. Heatherly's membership interest until August 30, 2018. The LLC's 2017 annual report showed two members. Mr. Carney blamed the discrepancy on Legal Zoom. The next annual report, filed after this action began, reduced that number to one.

B.

The trial court ruled in favor of Mr. Heatherly. The court found that Mr. Heatherly was a member of the LLC at formation. Whether he had fulfilled the sweat equity requirement for an additional percentage of membership interest was immaterial. Although "[h]e left the LLC when Mr. Carney expelled him, . . . it was acknowledged [at that time] that he had some ownership."

Mr. Heatherly sought relief under Tennessee Code Annotated § 48-228-104. Applying that statutory provision, the court ruled that Mr. Heatherly, "as a member of the LLC," was entitled to access the LLC's records. The court ordered the LLC to allow inspection. But the court placed restrictions on Mr. Heatherly's use of the information.

Turning to Mr. Heatherly's request for costs and attorney's fees, the court found that "Mr. Carney, acting on behalf of the LLC, [did not have] a reasonable basis to doubt [Mr. Heatherly's] right to inspect the LLC's records. Mr. Carney acknowledged [Mr. Heatherly's] ownership when he terminated him from the business, and listed [Mr. Heatherly] as a member in all filings with the State." So the court awarded Mr. Heatherly his costs, including attorney's fees, for pursuing this action.

## II.

### A.

Our review of the trial court's factual findings after a bench trial is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We give great deference to the trial court's credibility assessments. *Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). So we do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). We review questions of law de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

The dispositive issue in this case is whether Mr. Heatherly has a statutory right to inspect and copy the LLC's records. Because the LLC was formed in 2016, the Tennessee Revised Limited Liability Company Act applies. *See* Tenn. Code Ann. § 48-249-1002(a)(1)(A) (2019). The Revised Act affords members of an LLC a statutory right to access the LLC's records. *Id.* § 48-249-308(a) (2019). And if the LLC denies access, a court "may summarily order inspection or copying of the records demanded, at the expense of the LLC." *Id.* § 48-249-308(d); *see also id.* § 48-228-104(a) (2019).

The Revised Act defines "member" as "a person that has been admitted to an LLC as a member, as provided in § 48-249-501." *Id.* § 48-249-102(20) (2019). Members may be admitted when the LLC is formed or at a later time. *Id.* § 48-249-501(a), (b) (2019). Mr. Heatherly claims that he was a member from "day one." Mr. Carney agrees that Mr. Heatherly was offered membership. But Mr. Carney contends that there was a

condition precedent to becoming a member and that Mr. Heatherly never completed the required steps.[1]

The LLC documents suggest Mr. Heatherly was a member at formation, but they are not conclusive. *See id.* § 48-249-102(16) (defining LLC documents as the articles of organization and the operating agreement, if any). The Articles indicate that the LLC had four members at formation. *See id.* § 48-249-201(a) (2019) (providing that an LLC "is formed and its existence begins when the articles are filed"). And Mr. Carney later identified Mr. Heatherly as one of those members. But Mr. Carney claimed the filing was incorrect. The operating agreement, signed by Mr. Carney, listed both Mr. Carney and Mr. Heatherly as members. *See id.* § 48-249-203(a) (2019) (allowing, but not requiring, members to enter into an operating agreement). But the written agreement was never fully executed.

The parties' conduct before and after formation is relevant evidence of membership status. *See Parigin v. Mills*, No. E2016-00640-COA-R3-CV, 2017 WL 1032740, at *7-8 (Tenn. Ct. App. Mar. 16, 2017). Mr. Heatherly maintained that Mr. Carney offered him a 5% membership interest in exchange for his idea and his help in getting the business up and running. He accepted the offer and devoted hours of labor before the LLC began operations. The trial court found his testimony credible. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) ("[F]indings with respect to credibility and the weight of the evidence . . . may be inferred from the manner in which the court resolves conflicts in the testimony and decides the case."). In weighing the preponderance of the evidence, determinations of witness credibility are given great weight. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007).

Mr. Carney asks us to apply the cancellation rule and disregard Mr. Heatherly's testimony. He claims that Mr. Heatherly's trial testimony contradicted his sworn deposition testimony that the "agreement [was] for $10,000 in sweat equity."[2] We disagree.

"[C]ontradictory statements by the same witness regarding a single fact will cancel each other out." *Helderman v. Smolin*, 179 S.W.3d 493, 501 (Tenn. Ct. App. 2005). We only apply the cancellation rule when the inconsistency "is unexplained and when neither version of [the witness's] testimony is corroborated by other evidence." *Taylor v. Nashville*

---

[1] On appeal, the LLC asks us to vacate the court's judgment and remand for additional findings as to the terms of the parties' agreement and whether Mr. Heatherly met the condition precedent. We decline to do so on that basis. The court's opinion contains sufficient findings of fact and conclusions of law to determine how the court reached its ultimate conclusion on the inspection of records. *See Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013).

[2] Mr. Carney also argues that Mr. Heatherly's attorney represented that his client had a 10% interest. Whether Mr. Heatherly should be bound by his attorney's statement is a question for another day. We are only concerned with whether Mr. Heatherly is or was a member.

6

*Banner Publ'g Co.*, 573 S.W.2d 476, 483 (Tenn. Ct. App. 1978).  That standard has not been met here.  At trial, Mr. Heatherly testified that he qualified for a 15% interest: "Five percent for the idea, five percent that I bought and five percent for the second wagon."  In his deposition, he confirmed that the parties' agreement had a sweat equity component.  Yet he also clarified that the sweat equity requirement was for an additional 5% interest.  The picture of the white board proposal supports his testimony that his original 5% interest was not supplanted by the sweat equity agreement.

Despite his protestations on appeal, Mr. Carney's trial testimony also supports a finding that the sweat equity agreement was for an additional percentage.  He told the court that his agreement with Mr. Heatherly **"was for his idea and** for him to work for this sweat equity of the $10,000."  And in explaining his buyout offer, Mr. Carney testified:

> it says I'm willing to pay you 10%, which was not the agreed upon thing because he didn't do it.  So I was trying to be a decent person and give him that **extra five percent as a payoff.**  That's what I was really trying to do in this whole letter.

So, even if we discount Mr. Heatherly's testimony, ample evidence in this record supports the court's finding that Mr. Heatherly was a member at formation.  Both men acted like Mr. Heatherly was a member.  Mr. Carney authorized the filing of Articles of Organization for the LLC that included Mr. Heatherly as a member.  He signed a version of the operating agreement that identified Mr. Heatherly as a member.  Mr. Carney asked Mr. Heatherly to sign the same operating agreement and to pay some of the LLC's business expenses.  He shared the LLC's financial records with Mr. Heatherly.  He also held out Mr. Heatherly as his business partner to others.  And Mr. Carney tried to buy Mr. Heatherly's membership interest.

B.

In holding that Mr. Heatherly, as a member at formation, was entitled to inspect the records of Off The Wagon Tours, LLC, the trial court relied on Tennessee Code Annotated § 48-228-102(a).  Tennessee Code Annotated § 48-228-102 is part of the Tennessee Limited Liability Company Act, which applies to domestic LLCs, formed before January 1, 2006, that have not elected to be governed by the Revised Act. Tenn. Code Ann. § 48-249-1002(c).  Because Off The Wagon Tours, LLC was formed in 2016, the Tennessee Limited Liability Company Act was inapplicable.  As noted above, the Revised Act applies to Mr. Heatherly's request for records.

Although both the Tennessee Limited Liability Company Act and the Revised Act address inspection or access to records, the provisions are not identical. *Compare id.* § 48-228-102(a) (2019) (Limited Liability Company Act) *with id.* § 48-249-308(a) (2019) (Revised Act).  The Revised Act, unlike the Limited Liability Company Act, explicitly

gives both members and former members a right to access the LLC's records. *Id.* § 48-249-308(a). But former members may only access LLC records "for proper purposes pertaining to the periods during which they were members."[3] *Id.*

Here, the proof showed that Mr. Heatherly was a member at some point in time, but no finding was made regarding whether Mr. Heatherly remained a member. In other words, the court never considered whether Mr. Heatherly's membership interest was terminated under the Revised Act. *See id.* § 48-249-503 (2019) (specifying how a membership interest may be terminated).[4]

Because whether Mr. Heatherly's membership interest was terminated impacts his statutory right to access records, we vacate the court's inspection order. And we remand for additional findings regarding whether Mr. Heatherly remains a member of the LLC. In light of our conclusion that the incorrect statute was applied, we also vacate the court's award of attorney's fees and costs. After determining whether Mr. Heatherly is a member or a former member, the court should consider his request for attorney's fees and costs under the Revised Act. *See id.* § 48-249-308(d).

## III.

The evidence does not preponderate against the court's finding that Mr. Heatherly was a member of the LLC at formation. But because the Tennessee Limited Liability Company Act was applied in error, we vacate the inspection order and the award of attorney's fees and costs. We remand for the court to consider whether Mr. Heatherly's membership interest was terminated and to what extent he is entitled to access the LLC's records under the Tennessee Revised Limited Liability Company Act. On remand, the court should also consider whether an award of his attorney's fees and costs in pursuing this action is appropriate under the Revised Act.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

___

[3] No such restrictions are applicable to members, which creates a dilemma for manager-managed LLCs, like Off The Wagon Tours, LLC. *See* J. William Callison & Allan W. Vestal, *"They've Created a Lamb with Mandibles of Death": Secrecy, Disclosure, & Fiduciary Duties in Limited Liability Firms*, 76 IND. L.J. 271, 279 (2001) (recognizing the uniform statute "gives members a broad right to receive information but does not prevent them from using that information for their personal benefit, potentially in competition with the LLC or to usurp opportunities which otherwise could be pursued by the LLC"); *but see* UNIF. LTD. LIAB. CO. ACT § 408(a) cmt. (1996) (noting "an abuse of the access and copy right may create a remedy in favor of the other members as a violation of the requesting member or former member's obligation of good faith and fair dealing").

[4] Members may modify or waive the termination provisions of the Revised Act in the LLC documents. Tenn. Code Ann. § 48-249-205(a) (2019). *But see id.* § 48-249-205(b)(17) (Members may not vary the right to seek judicial expulsion of a member).